**LOUIS DREYFUS CORPORATION,**
Plaintiff/Appellant,

v.

**The AUSTIN COMPANY, INC.,**
Defendant/Appellee.

Court of Appeals of Tennessee,
Western Section, at Knoxville.

July 21, 1993.

Application for Permission to Appeal
Denied by Supreme Court Nov. 29, 1993.

Elizabeth Ann Rowland, Rowland & Row-land, P.C., George F. Legg and Eric J. Mor-rison, Stone & Hinds, P.C., Knoxville, for plaintiff/appellant.

H. Scott Reams, Taylor, Reams, Tilson & Harrison, Morristown, Jim D. Cooley, Wom-ble, Carlyle, Sandridge & Rice, Charlotte, NC, for defendant/appellee.

FARMER, Judge.

This appeal involves the scope and finality of an agreed order of release entered into by Appellant, Louis Dreyfus Corporation (Drey-fus) and Appellee, The Austin Company, Inc. (Austin Company). The lower court granted Austin Company's motion to reconsider, en-tering summary judgment in its favor, after finding that the release was a final judgment from which no appeal was taken and that it "intended to settle any liability of [Austin Company] however it may have arisen out of the contracting transaction." Dreyfus ap-peals from the trial court's ruling contending that the order of release is an interlocutory order, subject to revision by the trial court and that the claims it now seeks to assert against Austin Company (instrumentality/al-ter ego and tortious interference with con-tract) are not encompassed in the release.

A history of the litigation between these parties is necessary. In August 1986, Drey-fus filed a complaint against Austin Compa-ny, Tobacco Merchants Corporation (herein-after referred to as "TMC") and Unaka Com-pany, Inc. (hereinafter referred to as, "Una-ka")[1] alleging breach of contract to purchase 12,000 metric tons of "No. 2 yellow corn" from Dreyfus to be shipped between January 13, 1986 and January 31, 1986. Austin Com-pany and Unaka[2] filed a motion for summary judgment on grounds that "neither of the movants have ever contracted with [Dreyfus] or had any commercial relationship . . . with [Dreyfus], and that they are strangers to the alleged contract upon which [Dreyfus] sues." The chancery court denied the motion and ordered Dreyfus to file an amended com-plaint stating its claim for recovery against Austin Company upon the theory of agency. In its amended complaint, Dreyfus alleged that it contracted directly with TMC or Aus-tin Company or both or with TMC acting as agent for its disclosed principal Austin Com-pany.

Thereafter, the parties entered into an agreed order of release, dated June 28, 1988, which dismissed Dreyfus' complaint, as amended, against Austin Company. It is this agreed order which lies at the heart of the present controversy. The order states that

---

1. At the time of filing suit, Robert Austin was the Chief Executive Officer and President of TMC. The record reveals that Robert Austin died dur-ing the litigation of this matter. His brother, Tom Austin, is the Chief Executive Officer and Chairman of the Board of Austin Company. The Austin Company is in the business of buying and selling tobacco. TMC is in the business of buy-ing and selling commodities including beans and tobacco. Dreyfus is in the international com-modity trading business which includes buying and selling corn and other products both foreign and domestic. TMC is the commodities division of Unaka.

2. The record indicates that suit against Unaka was dismissed.

the "dismissal shall act as a release of all claims which [Dreyfus] asserted, or could have asserted, against [Austin Company] in said litigation and growing out of the alleged contracts for purchase and sale of corn as set forth in the complaint and other pleadings in this cause." The order further provides that all claims arising out of the alleged contracts to purchase and sell corn were released whether "[Austin Company] be alleged to be liable as a party to that contract or as the principal of the party to said contract, or otherwise, ... with full prejudice,...." This order was not designated "final" pursuant to Rule 54.02 T.R.C.P.

A bench trial resulted in a judgment in favor of TMC, entered on December 12, 1988. Dreyfus filed a notice of appeal "from the final judgment entered in this action on the 12th day of December, 1988." Dreyfus then moved the court for relief "from a judgment of this court entered September 26, 1988,[3] and for such other relief to which it may be entitled," pursuant to Rule 60.02(2) and (5) T.R.C.P. In its motion, Dreyfus contended that it had discovered relevant documents and records establishing TMC's intent to be bound to the contract to purchase corn and that the documents "were either intentionally and fraudulently withheld or their existence misrepresented...."[4] The trial court granted Dreyfus' motion, re-opened the case and authorized the parties "to proceed with discovery limited to the issue raised in [Dreyfus'] Rule 60.02 motion and matters reasonably calculated to lead to admissible evidence relating thereto; ...." An order was subsequently entered setting aside the judgment in favor of TMC upon a finding that TMC, Robert Austin and Tom Austin "failed to produce documents described in [Dreyfus'] subpoena."

In September 1990, Dreyfus filed a second motion for leave to file supplemental complaint and substitution of parties.[5] Dreyfus

---

3. The record indicates that the trial of this matter took place on the 21st through the 26th days of September 1988, but that judgment was not actually entered until December 12, 1988.

4. Dreyfus asserted the following in support of its motion:

> 4. At issue in the case and central to the trial court's opinion was the defendant's intent or lack thereof to be bound to a contract for the purchase of corn....
>
> 5. ... The contract sought to be enforced at trial related to a second contract for the purchase of another quantity of 12,000 metric tons of corn also destined to be shipped to Algeria....
>
> 6. During the discovery phase of the litigation, plaintiff sought to have defendant produce by subpoena all documents, contracts, correspondence and telex messages relating to the second contract or second shipment of corn and also asked both of the defendant's principal witnesses at their depositions to furnish all shipping documents relating to the first and second shipments....
>
> 7. Defendant produced ... only those documents of the second shipment showing that it had produced corn from Archer Daniel Midland Company in June, 1986, and shipped the corn to Algeria on the ship "RIZCUN ATLANTIC". At no time during discovery did defendants produce any shipping documents relating to its negotiations with a shipping company known as U.S. Trade and Shipping Corporation or World Trade and Shipping Corporation for shipment of the corn on the "LUCAYAN TRADER" in January, 1986....

> 8. In August, 1989, counsel for plaintiff first became aware that defendant had been engaged in arbitration ... during the pendency of the Chancery Court civil action. Inquiry into the arbitration records showed that defendant was aware of and/or had produced certain documents, correspondence and telex messages relating to the reservation of an oceangoing ship with U.S. Trade and Shipping Corporation for the transport of corn to Algeria. The documents include a petition to compel arbitration with attachments, including a telex message from [TMC] dated January 3, 1986,....
>
> 9. The defendant's telex dated January 3, 1986, confirms defendant's "acceptance" of a vessel for shipment of 12,000 metric tons of corn to Algeria with "loading to begin January 13, 1986 at [Dreyfus] Terminals, Baltimore". (emphasis added)
> ....
>
> 12. Plaintiff maintains that the documents and records relating to U.S. Trade and Shipping Corporation were not only relevant but highly probative of whether defendant intended and had in fact purchased the second shipment of corn from plaintiff....

5. Dreyfus' original motion for leave to file supplemental complaint sought to add Austin Company and the Austin brothers as additional parties defendant and to allege the following claims: (1) inducement or procurement of breach of contract by Robert Austin, Tom Austin and Austin Company; and (2) contempt of court for withholding evidence by Robert and Tom Austin acting individually and/or on behalf of TMC and/or Austin Company. Dreyfus' motion to file a sup-

asserted that the "claims set forth ... are based on events related to, but occurring after, the claim presented in the original Complaint" and sought to add as additional parties Austin Company, Mildred Buckles, the interim administratrix of the estate of Robert Austin, deceased, and Tom Austin. This complaint asserted the following three claims: Count I—Breach of contract against Austin Company and TMC based upon an instrumentality/alter ego theory of liability; Count II—Inducement or procurement of breach of contract against Robert Austin, Tom Austin and Austin Company; and Count III—Fraud against Robert and Tom Austin. An order was entered allowing Dreyfus to join Austin Company and Ms. Buckles as party defendants.

Austin Company filed an answer asserting the affirmative defenses of failure to state a claim, the statute of limitations and the agreed order of release previously entered by the trial court. Austin Company then filed a motion for summary judgment asserting that no genuine issue of material fact existed as Dreyfus' claims are barred by the statute of limitations and the consent order of dismissal released Austin Company from all claims growing out of the alleged contract for the purchase and sale of corn. The trial court denied the motion, but did not address the "validity or the scope of the release." [6] Upon Austin Company's motion to reconsider, the trial court entered summary judgment in favor of Austin Company.[7]

Appellant presents the following issues for resolution:

1. Whether the trial court erred in concluding as a matter of law that Louis Dreyfus Corporation's instrumentality/alter ego and inducement to breach of contract causes of action against the Austin Company were within the contemplation of both parties at the time of the execution and entry of the June 28, 1988 agreed order of release?

2. Whether the trial court erred in holding that the June 28, 1988 agreed order of release was a "final" Order as contemplated by Tenn.R.Civ.P. 54?

Appellee raises the following additional issues:

1. Alternatively, whether Dreyfus' alter ego claim is barred by the applicable statute of limitations.

2. Whether the court's prior summary judgment ruling dismissing Count II of Dreyfus' complaint for tortious interference with contract against the estate of Robert Austin and Tom Austin as a matter of law operates as a dismissal of the same claim against Austin.

■ We first address whether the agreed order of release is a "final" judgment within the meaning of Rule 54 T.R.C.P. Rule 54.02 T.R.C.P. states:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

---

plemental complaint was granted. A subsequent order was entered dismissing without prejudice Counts I and II as against Austin Company, Robert Austin and Tom Austin.

**6.** The court granted the motions for partial summary judgment filed by Tom Austin and Ms. Buckles on the grounds that Dreyfus' claim for tortious interference with contract was barred by the applicable statute of limitations and the defense of justification.

**7.** A consent judgment was subsequently entered in favor of Dreyfus against TMC in the amount of $456,900 for breach of contract and against Tom Austin and the Estate of Robert Austin in the amount of $85,000 for "damages arising from their actions alleged in the Civil Action."

Applying the foregoing rule to the instant litigation, we determine that the agreed order of release was "interlocutory" and subject to revision by the trial court until entry of the judgment in favor of TMC on December 12, 1988. The parties do not dispute this fact. At issue is whether the trial court's vacating of this judgment altered the finality of the order of release. Upon review of the law in this jurisdiction, we find that it did not. The parties do not dispute that a judgment was entered in favor of TMC as against Dreyfus and that Dreyfus appealed from this "final judgment entered ... on the 12th day of December, 1988." Austin Company argues that once this judgment was entered, adjudicating the rights and liabilities of all remaining parties, the agreed order of release became a final judgment from which appeal could be taken. Austin Company asserts that Dreyfus never appealed from the agreed order, but only from the judgment in favor of TMC and that it was not served with notice of the appeal or named in it. The record reveals that Austin Company was not named in the appeal from the "final judgment entered ... on [December 12, 1988]." Dreyfus does not argue that notice of the appeal was served upon Austin Company. Rule 5(a) T.R.A.P. specifically states, "the appellant in a civil action shall serve a copy of the notice of appeal on counsel of record of each party or, if a party is not represented by counsel, on the party, and on the clerk of the appellate court designated in the notice of appeal."

Austin Company cites *Guess v. Maury*, 726 S.W.2d 906 (Tenn.App.1986), which we find decisive of the issue before us. In *Guess*, the plaintiffs instituted a medical malpractice action naming as defendants the treating physician and the hospital in which he practiced. *Guess*, 726 S.W.2d at 907. During the course of proceedings, the plaintiffs' claim against the hospital was summarily dismissed. *Id.* at 921. The trial by jury proceeded against the doctor and an obstetrical association of which he was a member. *Id.* at 908. Before the jury returned its verdict, plaintiffs filed a motion to reinstate the hospital as a defendant and to amend their complaint to allege the tort of outrageous conduct. *Id.* The trial court denied this motion. *Id.* The jury returned a verdict in favor of plaintiffs and they appealed from the trial court's denial of their motion for new trial and an order unrelated to the summary judgment entered in favor of the hospital. *Id.* On appeal, plaintiffs submitted that the trial court erred in denying their motion to reinstate the hospital and to amend their complaint. *Id.* at 909.

In noting that the plaintiffs did not raise as an issue on appeal the grant of summary judgment in favor of the hospital, this Court stated:

It should be kept in mind that plaintiffs' claim against Baptist had been dismissed through summary judgment. Under Rule 54.02, T.R.C.P., the trial court had the privilege of reversing itself up to and including the date of entry of a final judgment in this litigation. This is particularly true since the order granting summary judgment was never made final under Rule 54.02, T.R.C.P. During the many months following summary judgment, plaintiffs never sought to avail themselves of this relief. The eleventh-hour motion of plaintiffs seeking to assert a new cause of action against Baptist and to add Baptist as a defendant without it having participated in the trial is not the equivalent of a motion to set aside an order of summary judgment. Once a final judgment was entered below, plaintiffs had a right to raise on appeal to this Court the action of the trial judge in granting summary judgment in favor of Baptist, inasmuch as the order granting summary judgment in favor of Baptist became final at the same time as the final judgment in the lawsuit. Again, plaintiffs failed to avail themselves of this right, and inasmuch as they failed to file a notice of appeal from the order granting summary judgment in favor of Baptist and to present it as an issue on appeal, that judgment has become final.

*Id.* at 922. The record before us reveals that Dreyfus never appealed from the agreed order.

Dreyfus insists that *Guess* is not dispositive of the instant case because the decision did not address a situation in which a previously final judgment was set aside. The

record shows that Dreyfus' motion for relief from the judgment in favor of TMC does not address the agreed order of release.

The relief granted on a motion to amend, modify, or vacate an order should be limited to that requested and such other relief as may be strictly incidental thereto. 60 C.J.S. *Motions and Orders* § 62(5)(c) 1969. The record further reveals that the relief granted by the trial court was as requested in Dreyfus' motion—the judgment in favor of TMC was set aside. Thus, we hold that the trial court's grant of Dreyfus' Rule 60 motion did not affect the finality of the agreed order of release from which no appeal was taken.

■ In evaluating a motion for summary judgment, we must consider whether a factual dispute exists; whether the disputed fact is material to the outcome of the case; and whether the disputed fact establishes a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn.1993). As the above facts are not disputed, we conclude that there exists no genuine issue of material fact as to the finality of the agreed order of release and we uphold the trial court's grant of summary judgment in favor of Austin Company.

We next consider whether the agreed order of release effectively bars Dreyfus from asserting its claims for tortious interference with contract and instrumentality/alter ego against Austin Company. The chancellor held that these claims are barred by the June 28, 1988 order of dismissal.

■ It is an established principle of Tennessee law that "the scope and extent of a release depends on the intent of the parties as expressed in the instrument" and that "[a] general release covers all claims between the parties which are in existence and within their contemplation;...." *Evans v. Tillett Bros. Constr. Co.*, 545 S.W.2d 8, 11 (Tenn. App.1976) (citing *Cross v. Earls*, 517 S.W.2d 751 (Tenn.1974)). The *Evans* decision cites with approval the following language from 66 Am.Jur.2d 706, § 30:

The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances. The intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible. In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

*Evans*, 545 S.W.2d at 11.

■ Dreyfus insists that it did not intend to include its claims for inducement of breach of contract and instrumentality/alter ego in the release. The affidavit of Mr. Legg, counsel for Dreyfus, states, "[a]t the time of the execution of the Order dated June 28, 1988 and entered on July 1, 1988, I did not contemplate releasing any claims regarding [Dreyfus'] alter-ego theory, [Dreyfus'] claim for inducement or procurement of breach of contract, ... nor was I authorized by [Dreyfus] to do so."

The record also includes the affidavit of Jacob Glick, the Executive Vice–President of Dreyfus during the time relevant to this litigation. Glick states:

During all the negotiations for both the first and second contracts for the two shipments of corn, it was impossible to distinguish between [Austin Company] and [TMC]. When telephone calls were made to Rick Fuss, Bob Austin or Tom Austin regarding the two contracts for the sale of corn, the telephone was answered 'The Austin Company'. All telexes regarding these two contracts were sent to the telex number of [Austin Company].

Glick's affidavit was made and subscribed on April 5, 1988, prior to the June 28, 1988 order of release.

As stated in *Evans*, we must gather the intention of the parties from the entire instrument, giving effect to each and every part if possible, and consider the terms in

light of all surrounding facts and circumstances. The instrument in question specifically states that Austin Company is released from all claims "growing out of the alleged contracts [for the purchase and sale of corn]." Clearly, Dreyfus' instrumentality/alter ego claim arose out of the alleged contracts. The instrument also provides that Austin Company is released whether it be a party to the contract, the principal of a party to the contract, "or otherwise." Giving effect to each and every part of the instrument, we conclude that Dreyfus' instrumentality/alter ego claim was encompassed in the release.

We also consider the terms in light of the surrounding facts and circumstances which reveal that, during the negotiations of the alleged contracts between the parties, the Executive Vice–President of Dreyfus found it "impossible to distinguish between [Austin Company] and [TMC]." Glick's affidavit further reveals:

3. In December 1985, [Dreyfus] was contacted by a man by the name of Rick Fuss who represented himself as being associated with [Austin Company] and wanted to buy 12,000 metric tons of corn for a shipment to Algeria. During the negotiations of the first December 1985 sale of corn, I asked for financial references since Dreyfus has never done business with the Austin Company previously.... When the contract for the sale of corn was made ... Rick Fuss told me to label the buyer of the ... corn as [TMC]. During the negotiations for the sale of the corn and prior to the actual sale contract, Rick Fuss would confirm items of negotiation for the purchase of corn with "the Austins".

... The buyer in the second sale of corn was also labeled [TMC].

For the above two contract agreements for the sale of two shipments of ... corn, [Dreyfus] dealt with [TMC] in good faith on the basis of the financial record and reputation of [Austin Company].

Additionally, the proof shows that Dreyfus originally filed suit against both TMC and Austin Company alleging that it contracted directly with Austin Company. In its amended complaint, Dreyfus alleged that it contracted directly with TMC or Austin Company or both.

In view of the surrounding facts and circumstances, it is difficult to imagine that Dreyfus did not intend to release its instrumentality/alter ego cause of action since, in essence, it is the same claim originally asserted. The claim originally asserted was for breach of contract. Now Dreyfus seeks to hold Austin Company liable *for breach of contract* under an instrumentality theory. Dreyfus' latest complaint states that "[b]y virtue of the control that [Austin Company] ... exercised over [TMC], and by virtue of the effective merger of these corporations, [Austin Company] and [TMC] are jointly and severally liabile [sic] ... *for breach of contract as set forth in the original complaint.*" (Emphasis added.) Although Dreyfus argues that "Austin Company used [TMC] as an instrumentality to perpetrate fraud upon Dreyfus," the record does not reveal that Dreyfus ever alleged fraud against Austin Company. Thus, we find that the intention of the parties, as expressed in the order of release and considered in light of all surrounding facts and circumstances, was to include Dreyfus' claim for breach of contract under an instrumentality theory of liability.

As to Dreyfus' claim for tortious interference with contract, we find that this cause of action arose out of the alleged contracts for the purchase and sale of corn. If not for the alleged contracts, there could be no tortious interference. The language of the order of release unequivocally states that all claims growing out of the alleged contracts for the purchase and sale of corn against Austin Company were dismissed with prejudice. We find the reasoning of the trial court to be sound when stating, "[t]he matters at issue, existence of a contract, who was bound thereon if anyone, and who was liable for breach were all involved in the original litigation, and are again in the present claim."

■ In ruling on motions for summary judgment, this Court must determine whether a genuine issue exists as to any material fact. *See, Byrd,* 847 S.W.2d at 214. In making this determination, we must consider the evidence in a light favorable to the non-moving party. *Id.* at 275. The evidence

reveals a factual dispute as to whether the parties intended to include Dreyfus' alter ego and tortious interference with contract claims in the release, which we consider material to the outcome of the case. We do not find, however, this disputed material fact to create a "genuine issue" within the meaning of Rule 56.03. *Id.* at 215. A genuine issue exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* A genuine issue for purposes of Rule 56.03 does not include mere legal conclusions to be drawn from those facts. *Id.* Based upon the record before us, we find that a jury could only conclude that the parties intended to release the claims now asserted by Dreyfus. The affidavit of Legg is considered by this Court to be mere legal conclusion of what the parties actually intended and insufficient to create a genuine issue.

Based on the foregoing, we conclude that the agreed order of release is a final judgment from which no appeal was taken and encompasses the claims Dreyfus now seeks to assert. The judgment of the trial court is affirmed and costs are taxed to Appellant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.