IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JULY 23, 2009 Session

## SCOTT PEATROSS, Administrator of the Estate of BLANCHARD GREENWOOD, deceased v. SHELBY COUNTY, TENNESSEE, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-002713-07     Robert L. Childers, Judge

No. W2008-02385-COA-R3-CV - Filed September 10, 2009

This appeal results from the trial court's grant of summary judgment in favor of defendants. The issue before the trial court was the scope of a release agreement signed by the decedent's children and one of the defendants ("the Med"). The remaining defendants argued that this agreement provided for the release of claims against all potential defendants. Plaintiff responded that the parties to the agreement had no intention of releasing additional parties. Examining the language of the release and the circumstances surrounding its execution, we agree with the trial court's finding that plaintiff's claims against defendants were released. We also agree with the trial court's finding that the agreement released any civil rights claims that plaintiff might assert against the Med. The judgment of the trial court is therefore affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jeffrey S. Rosenblum and Marc E. Reisman, Memphis, Tennessee for the Appellant, Scott Peatross.

Debra L. Fessenden, Memphis, Tennessee for the Appellee, Shelby County Tennessee.

Gail O. Mathes, Memphis, Tennessee for the Appellee, City of Memphis.

James F. Kyle, Jessica M. Hackett, and Katherine L. Frazier, Memphis, Tennessee, for the Appellee, Shelby County Healthcare Corporation d/b/a Regional Medical Center at Memphis ("the Med").

Christopher V. Vescovo, Edd L. Peyton, Memphis, Tennessee, for the Appellee, Amos Raymond, M.D.

## OPINION

## Background

The events leading to the present action occurred on May 22 and 23, 2006. The entire factual background is not relevant on appeal, but in summary, Blanchard Greenwood sustained injuries and subsequently died as a result of those injuries on May 23, 2006 at the Med.

On June 2, 2006, a representative from the Med met with Mr. Greenwood's two children: Japonica Greenwood and Cedric Greenwood. At that meeting, the Greenwoods, along with their step-brother, Dwaynne McCurdy, discussed a settlement of claims with the Med. As a result of this meeting the parties signed an AGREEMENT OF FULL RELEASE, INDEMNITY AND SETTLEMENT OF ALL CLAIMS ("the Release"), which provided in relevant part, as follows:

> The undersigned Releasors...do hereby fully release and discharge the Released Party [the Med] and each and every representative, agent, servant, employee, officer or director of the Released Party ***and any other persons, firms, insurers, or other entities who, together with the Released Party*** may be liable in any way resulting from the incident or event made the subject matter of the above referenced facts and/or transactions from any and all past, present or future claims, demands, obligations, and liens, including, but not limited to, all medical, TennCare, Medicare and/or Medicaid liens, actions, causes of actions, negligence claims, wrongful death claims, loss of consortium claims, ***civil rights claims***, discrimination claims...which the Releasors now have individually or as the heirs at law of Blanchard Greenwood, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way arise out of, or any future action of the Releasors' representatives, which may have resulted or may result from alleged acts or omissions of the Released Party.

(emphasis added). The agreement identifies the Med as the Released Party.

On May 22, 2007, Scott Peatross ("Plaintiff"), in his representative capacity as Administrator of the Estate of Blanchard Greenwood, filed a complaint against several defendants, including: Shelby County, Tennessee; City of Memphis, Tennessee; Shelby County Healthcare Corporation d/b/a The Regional Medical Center at Memphis ("the Med"); and Amos Raymond, M.D.[1] The complaint alleged that Mr. Greenwood's injuries and death were the result of negligence on the part of defendants. The complaint also asserted a civil rights claim pursuant to 42 U.S.C. § 1983 against Shelby County, the City of Memphis, and the Med.

After a brief discovery period, defendants filed motions for summary judgment. Defendants asserted that the Release signed by Mr. Greenwood's heirs released any claims that plaintiff might

---

[1]The complaint named several other defendants, but this appeal is limited to those defendants who were granted summary judgment in the trial court.

have against defendants. Plaintiff responded to the motions for summary judgment and filed the affidavits of Japonica Greenwood and Cedric Greenwood. The affidavits both asserted that "[w]hen signing the settlement agreement, we had absolutely no intention of releasing anyone other than the Med, its employees, officers, and directors." They further asserted that they "had no idea whatsoever that we had a right to pursue a claim against the Med or any other person or entity pursuant to 42 U.S.C. § 1983." Consequently, plaintiff argued that the Release should not be read to preclude its claims against defendants.

On September 23, 2008, the trial court entered an order granting defendants' motions for summary judgment. The transcript from the hearing of the motions was attached to the order. In its oral ruling, the trial court considered the decision in *Evans v. Tillett Bros. Constr. Co., Inc.*, 545 S.W.2d 8 (Tenn. Ct. App. 1976) and applied its rule to the Release signed by the parties. The trial court concluded that the plain language of the Release clearly provided for the release of all claims against any potential defendants and was not limited to claims against the Med. Plaintiff appeals the trial court's ruling.

## Issues Presented

I. Did the trial court err by granting summary judgment in favor of unnamed and unidentified tortfeasors due to a General Release between Decedent's children and the Med where the undisputed evidence was that there was no intent to release those tortfeasors?

II. Did the trial court err by granting summary judgment on all claims for relief against the Med despite allegations and proof of mutual mistake of the parties or fraud on the part of the Med?

## Law and Analysis

A trial courts decision to grant a motion for summary judgment presents a question of law. Tenn. R. Civ. P. 56.04. Our review is *de novo* with no presumption of correctness afforded to the trial court's ruling. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In evaluating the trial courts decision to grant summary judgment, we view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993); *Mooney v. Sneed*, 30 S.W.3d 304, 305-06 (Tenn. 2000).

A release is a contract and the rules of construction applied to contracts are used in construing a release. *Richland Country Club, Inc. v. CRC Equities, Inc.*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). Generally speaking, the scope and extent of release depends on the intent of the parties as expressed in the instrument. A general release covers all claims between the parties which are in existence and within their contemplation; a release confined to particular matters or causes operates to release only such claims as fairly come within the terms of the release. *Cross v. Earls*, 517 S.W.2d 751, 752 (Tenn. 1974). In *Evans v. Tillett Bros. Constr. Co., Inc.*, 545 S.W.2d 8 (Tenn. Ct. App. 1976), the Court explained how the scope of a release should be determined:

The scope of a release is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances. The intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible. In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

*Id.* at 11; *see also*, *Richland ,* 832 S.W.2d at 557; *Jackson v. Miller*, 776 S.W.2d 115, 118 (Tenn. Ct. App. 1989). Subsequent decisions have further explained that "[a] release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given....Consequently a demand of which a party was ignorant when the release was given is not as a rule...embraced therein...." *Jackson*, 776 S.W.2d at 118 (*quoting* 76 C.J.S. *Release* § 52 (1952)).

In *Evans*, plaintiff signed an agreement releasing one tortfeasor from liability "and all other persons, firms or corporation liable or who might be claimed to be liable." *Evans*, 545 S.W.2d at 10. The defendants filed a motion for summary judgment asserting that the settlement agreement released them from liability as well. In response, plaintiff filed an affidavit indicating that he had been told that the agreement would only release the defendant driver and that he relied upon this representation when signing the agreement. *Id*. On review, the Court found "that the affidavits submitted in support of the motion created a material issue of fact with regard to the intention of the parties in releasing an unnamed tortfeasor...." *Id*. at 12. Consequently, the Court concluded that summary judgment was inappropriate. *Id*.

The Court, in *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649 (Tenn. Ct. App. 1993), applied the "intent" approach set forth in *Evans.* The Court first examined the language of the release and then considered the agreement's terms in light of the surrounding facts and circumstances. After considering both the terms of the agreement and the extrinsic evidence explaining those terms, the Court found that summary judgment was appropriate because "a jury could only conclude that the parties intended to release the claims now asserted by [plaintiff]." *Id*. at 656.

In *Richland*, defendants moved for summary judgment on the basis of a release included in an agreement with plaintiff. *Richland*, 832 S.W.2d at 557. Plaintiff presented two affidavits to show the intention of the parties when they signed the release agreement. In granting summary judgment, the trial court found that the agreement was unambiguous and therefore did not consider plaintiff's affidavits. On appeal, the Court recited the rules on the construction of a release agreement and found that the trial court erred: "[t]hus, it appears that the circumstances surrounding the execution of the documents in this case, the situation of the parties, the business to which the agreements related...and the subject matter of the agreements in general should have been considered

in construing the effect of the release." *Id*. at 557. Considering this new information, the Court found that summary judgment was inappropriate because "a trier of fact could draw different inferences about the parties' intent." *Id*. at 557.

Applying these rules in the present case, it appears that we must first consider the language of the Release itself. Second, we must examine the facts and circumstances surrounding the execution of the Release. In doing so, we will consider the Greenwoods' affidavits offered by plaintiff in order to determine the parties' intent. If a trier of fact could draw different inferences about their intent, summary judgment is inappropriate. *See Evans*, 545 S.W.2d at 12.

## A. Defendants Shelby County, City of Memphis, and Dr. Raymond

With respect to these defendants, Plaintiff contends that a factual dispute exists on the intent of the parties to the Release and that summary judgment was therefore inappropriate. We disagree.

Examining the language of the Release itself, we find that the parties agreed that the releasing party would release "the Released Party and any other persons, firms, insurers, or other entities who, together with the Released Party may be liable in any way resulting from the incident." Plaintiff points to other provisions of the Release that define the Released Party more generally as "The Med." The Tennessee Supreme Court, however, has explained that "[a]s a rule, where there are, in a contract, both general and special provisions relating to the same thing, the special provisions control." *Cocke County Bd. of Highway Comm'rs v. Newport Utilities Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985) (*quoting* 17 Am. Jur. 2d *Contracts* § 270 (1964)). Here, the general definitions of the Release are subordinate to the specific provision releasing "any other persons" from liability. The language of the Release therefore supports defendants' contention that plaintiff's claims against them have been released.

Next, we must analyze the facts and circumstances surrounding the execution of the Release to determine whether the parties intended to release potential claims against these defendants. Plaintiff relies on the *Evans* decision to support its argument that this issue should be decided by the trier of fact. In *Evans*, the releasing party testified that he had been told that the release agreement would only apply to one, specific defendant. *Evans*, 545 S.W.2d at 10. He further stated that he relied on this representation when signing the agreement. In the present case, there was no such representation by the Med. In their affidavits, the Greenwoods simply assert that they were not aware that the Release applied to parties other than the Med.

This Court has previously held that "in matters of unambiguous written instruments absent proof of fraud, misrepresentation, undue influence and situations of like character, the unspoken subjective intent of a party is not relevant." *Malone & Hyde Food Servs. v. Parson*, 642 S.W.2d 157, 159 (Tenn. Ct. App. 1982). Here, the Greenwoods have offered only their subjective impression on their intent when signing the Release. They have not, however, pointed to any independent facts or circumstances from which a jury could conclude that they did not intend to release parties in addition to the Med. Consequently, the *Evans* decision is distinguishable.

Examining the facts and circumstances surrounding the execution of the Release, we find that neither party inquired or made representations about the scope of the Release. The unspoken subjective intent of the Greenwoods is therefore irrelevant and does not affect our reading of the plain language of the Release.

Having examined the Release itself and the facts and circumstances surrounding its execution, we find that the parties intended to release all parties, who in addition to the Med, may have been liable for Mr. Greenwood's injuries. Consequently, we find that the trial court did not err in granting summary judgment in favor of Shelby County, the City of Memphis, and Dr. Raymond.

## B. The Med

With respect to the Med, plaintiff contends that the parties to the Release did not intend to release any civil rights claims against the Med. Again, we look to the language of the Release and the facts and circumstances surrounding its execution in order to determine the intent of the parties.

The language of the Release itself clearly provides that the Med is released from any "civil rights claims." In their affidavits, however, the Greenwoods assert that the representative from the Med told them that there was a "cap" on the amount that the Med could pay in damages. The Greenwoods assert that they were not aware that this "cap" would not apply to civil rights claims brought pursuant to 42 U.S.C. § 1983. Under these circumstances, plaintiff asserts that there is an issue of material fact as to the parties' intent for a jury to decide. Again, plaintiff relies on the statement in *Evans* that "whether a release has been executed under mutual mistake of a material fact is a question for the jury." *Evans*, 545 S.W.2d at 11.

Releases are governed by contract law, and courts generally "will not relieve parties from contractual obligations simply because they later prove to be burdensome or unwise." *Hunt v. Twisdale*, No. M2006-01870-COA-R3-CV, 2007 WL 2827051, at * 7 (Tenn. Ct. App. Sept. 28, 2007). However, "courts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain." *Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006). Courts may also "modify the provisions of a written contract where only one of the parties was operating under a mistake of fact or law if the mistake was influenced by the other party's fraud." *Id*. The goal of reformation is to "make the contract 'conform to the real intention of the parties.'" *Id*. at 287 (quoting *Lebo v. Green*, 426 S.W.2d 489, 494 (Tenn. 1968)). Because the law favors the validity of written agreements, the party seeking to reform the agreement must prove the mistake by clear and convincing evidence. *Id*. at 287.

To be entitled to relief on grounds of mistake, the mistake must have been mutual or fraudulent and it must be material to the transaction. The party seeking relief must also show injury and that the mistake was not due to the complainant's negligence. *Hunt*, 2007 WL 2827051, at *7. Finally, if the claim for relief is based on mutual mistake, "the intent of both parties must be clear and must be the same." *Id.*, at *8.

Reviewing the Release and the Greenwoods' affidavits, we find that the plaintiff has not established mistake. Unlike the parties in *Evans*, the Med and the Greenwoods did not discuss the specific meaning of the provision in question. The Med's representative only informed the Greenwoods that there was a statutory limit on the damages that it could pay. Furthermore, the Med's representative did not discuss civil rights claims with the Greenwoods. In *Evans,* the released party made specific assertions to the plaintiff on the meaning and scope of their agreement. Here, the only statements about civil rights claims are included in the Release itself, and the Release provides that those claims are released. Furthermore, the *Evans* decision involved a broad, general provision of the parties' agreement, not a specific provision explicitly releasing a certain type of claim. Consequently, we find that the parties' intent on this question is clear and that the trial court did not err in granting summary judgment in favor of the Med.

For the foregoing reasons, the ruling of the trial court is affirmed. Costs of this appeal are assessed to Appellant, Scott Peatross, Administrator of the Estate of Blanchard Greenwood.

 

_____

J. STEVEN STAFFORD, J.