IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2012 Session

JAMIE PAUL LEDBETTER and wife, CHARLENE LEDBETTER v.
DONALD L. SCHACHT, ET AL.

Direct Appeal from the Circuit Court for Henderson County
No. 09175      Roy B. Morgan, Jr., Judge

No. W2011-01857-COA-R3-CV - Filed August 31, 2012

After purchasing a home, the plaintiffs sued the sellers' real estate agent under the Tennessee Residential Property Disclosure Act for failing to disclose that work was done on the foundation of the home prior to the purchase. The trial court granted summary judgment to the real estate agent, finding that she had no knowledge of adverse facts as defined by the Tennessee Residential Property Disclosure Act. The plaintiffs appeal. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

John S. Little, Hailey H. David, Jackson, Tennessee, for the appellants, James Paul Ledbetter and wife, Charlene Ledbetter

Russell E. Reviere, Nathan E. Shelby, Jackson, Tennessee, for the appellee, Linda Lipscomb

OPINION

## I.  FACTS & PROCEDURAL HISTORY

Jamie and Charlene Ledbetter purchased a house and lot in Lexington, Tennessee, in December 2008.  In November 2009, the Ledbetters filed this lawsuit against the sellers, a relocation company involved with the sale, and the sellers' real estate agent, Linda Lipscomb.[1]  The Ledbetters alleged that the defendants had failed to disclose to them the existence of "foundation and structural defects" in the home and "repair attempts" that took place prior to the sale.  They claimed that as a result of either the defects themselves or "the shifting in the foundation which occurred during the repair work," they were "experiencing problems including but not limited to loose grout in the tile floors and showers, cracks in the walls, uneven hardwood flooring, loose exterior siding and brick, and plumbing problems."  The Ledbetters alleged that Ms. Lipscomb had violated the Tennessee Residential Property Disclosure Act, Tenn. Code Ann. § 66-5-201, *et seq.*, by failing to disclose her knowledge of the defects.[2]  Ms. Lipscomb filed an answer, and written discovery ensued.

In September 2010, Ms. Lipscomb filed a motion for summary judgment, along with her own affidavit, in which she stated, "I had no knowledge of any defects in the property or of any adverse information concerning the structural integrity of the property."  Ms. Lipscomb further stated that the Ledbetters had personally viewed the property prior to closing and hired a home inspector to perform an inspection for them, and that the Ledbetters' home inspector found no problems with the foundation.  Ms. Lipscomb filed the home inspector's report from November 2008, which classified the foundation as "acceptable," the most favorable rating available on the report.  Finally, Ms. Lipscomb submitted a report from an engineer who had examined the home for any structural deficiencies in May 2008, approximately six months prior to the Ledbetters' purchase of the home, which stated that the house was structurally sound.  Based upon this evidence, Ms. Lipscomb argued in her motion for summary judgment that she had negated an essential element of each claim asserted by the Ledbetters, i.e., that she had knowledge of any alleged defect.  Alternatively, Ms. Lipscomb argued that the Ledbetters' complaint was barred by an "as is" clause in the contract they signed.

---

[1]  Only the claims against Ms. Lipscomb are at issue on appeal.

[2]  The Ledbetters' complaint alleged several causes of action against the various defendants, including fraud, negligence, violation of the Tennessee Residential Property Disclosure Act, Tenn. Code Ann. § 66-5-201, et seq., and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.  All of these claims were eventually dismissed.  On appeal, the parties do not mention the claims for fraud, negligence, and violation of the Tennessee Consumer Protection Act.  As such, we will confine our review on appeal to whether the trial court properly dismissed the Ledbetters' claim for violation of the Tennessee Residential Property Disclosure Act.

After the parties' depositions were taken, the Ledbetters filed a response to the motion for summary judgment, arguing that Ms. Lipscomb did in fact have knowledge of structural defects and repairs at the property prior to the sale. The Ledbetters submitted a report from a structural inspection completed in November 2007, approximately one year prior to their purchase of the property, in which numerous structural issues were identified and repairs were recommended. These repairs included the installation of an "LVL" beneath one wall due to an overloaded joist; the replacement of wood pier shims with metal shims; the installation of intermediate support piers where some girders were overspanned; the replacement of dry-stacked masonry block piers with rebuilt mortared joints; the installation of reinforcement where the I joist had been notched to accommodate piping and ductwork; and securing the framing to the foundation with anchor bolts. Two follow-up structural inspections were conducted in January and February of 2008. Ms. Lipscomb was the listing agent for the property throughout this period of time, and the person who completed the recommended repairs (the original builder of the house) also happened to be Ms. Lipscomb's live-in boyfriend. During her deposition, Ms. Lipscomb testified that she knew that a structural inspection was performed at the house and that some additional work on the foundation was necessary in response thereto. However, she testified that she never saw the actual reports from the inspections or knew the extent of the work performed. Ms. Lipscomb characterized the work simply as "code upgrades" rather than repairs. She testified that, in any event, it was her understanding that all of the recommended work had been completed by at least May of 2008, and that the house was in compliance with the applicable codes thereafter. Ms. Lipscomb admitted that she did not inform the Ledbetters or their real estate agent about the "upgrades." The Ledbetters argued that this deposition testimony created a genuine issue of material fact regarding whether Ms. Lipscomb had knowledge of adverse facts that should have been disclosed to them prior to the sale.

Following a hearing, the trial court entered summary judgment in favor of Ms. Lipscomb, finding that she had demonstrated as a matter of law that she "had no adverse knowledge of material facts affecting the structural integrity of the property," and therefore, there was no genuine issue of material fact with regard to the claims against her. This order was made final pursuant to Rule 54.02, and the Ledbetters timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, the Ledbetters basically assert that the trial court erred in granting summary judgment to Ms. Lipscomb because a genuine issue of material fact exists regarding their claim that she had knowledge of adverse facts. In response, Ms. Lipscomb contends that summary judgment was proper either because she established a lack of knowledge of adverse facts, or because of the "as is" clause in the contract signed by the Ledbetters.

## III.  STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" **Martin v. Norfolk S. Ry.**, 271 S.W.3d 76, 84 (Tenn. 2008) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). In other words, "[i]f reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." **Green v. Green**, 293 S.W.3d 493, 514 (Tenn. 2009) (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." **Id.** (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)).

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." **Green**, 293 S.W.3d at 513 (citing *Martin*, 271 S.W.3d at 83; *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." **Martin**, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d 1, 5 (Tenn. 2008)). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." **Id.** at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." **Id.** (citing *Byrd*, 847 S.W.2d at 215).

If the moving party does make a properly supported motion, the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. **Martin**, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd*, 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant

to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Id.* However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV.   DISCUSSION

The Ledbetters alleged in their complaint that Ms. Lipscomb "had a duty to disclose any adverse facts relating to the property," and that Ms. Lipscomb's failure to disclose the home's "foundation and structural defects and subsequent repair attempts" violated the Tennessee Residential Property Disclosure Act, Tenn. Code Ann. § 66-5-201, *et seq.* In order to resolve the issues before us, we will begin by examining the duties owed by real estate licensees under the Tennessee Residential Property Disclosure Act and other relevant statutes.

The Tennessee Residential Property Disclosure Act requires the *owner* of residential property to furnish a residential property disclosure statement to a purchaser regarding the condition of the property, including any material defects known to the owner.[3] Tenn. Code Ann. § 66-5-202(1). However, the form must contain notice that the information contained in the disclosure statement constitutes the representations of the owner, and not the real estate licensee or sales person, if any. *Id.* With regard to duties of a real estate licensee, the Act requires the licensee to inform buyers or sellers whom they represent (and, in some cases, unrepresented buyers) of their rights and obligations under the Residential Property Disclosure Act, but the Act provides:

> If a real estate licensee performs those duties [to inform], the licensee shall have no further duties to the parties to a residential real estate transaction under this part, and shall not be liable to any party to a residential real estate transaction for a violation of this part or for any failure to disclose any

---

[3] If the purchaser waives the required disclosure statement, the property owner may alternatively provide a disclaimer statement stating that the owner makes no representations or warranties as to the condition of the real property or any improvements thereon and that the purchaser will be receiving the real property "as is." Tenn. Code Ann. 66-5-202(2).

information regarding any real property subject to this part. However, a cause of action for damages or equitable remedies may be brought against a real estate licensee for intentionally misrepresenting or defrauding a purchaser. A real estate licensee will further be subject to a cause of action for damages or equitable relief for *failing to disclose adverse facts of which the licensee has actual knowledge or notice*. "Adverse facts" means conditions or occurrences generally recognized by competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.

Tenn. Code Ann. § 66-5-206 (emphasis added). Another section of the Act reiterates that the representations made in the disclosure statement are not that of the real estate licensee, stating, "A real estate licensee may not be the subject of any action and no action may be instituted against a real estate licensee for any information contained in the [disclosure form], unless the real estate licensee is signatory to such." Tenn. Code Ann. § 66-5-208(d)(1). However, that same subsection goes on to provide, "Nothing in this subsection (d) shall be construed to exempt or excuse a real estate licensee from making any of the disclosures required by § 62-13-403, § 62-13-405 or § 66-5-206, nor shall it be construed to remove, limit or otherwise affect any remedy provided by law for such a failure to disclose." Tenn. Code Ann. § 66-5-208(d)(2).

One of those referenced statutes, § 62-13-403, is found within the Tennessee Real Estate Broker License Act of 1973, which provides:

A licensee who provides real estate services in a real estate transaction shall owe all parties to the transaction the following duties, except as provided otherwise by § 62-13-405,[4] in addition to other duties specifically set forth in this chapter or the rules of the commission:
. . .
(2) Disclose to each party to the transaction any adverse facts of which the licensee has actual notice or knowledge[.]

For purposes of the Real Estate Broker License Act, "adverse facts" means "conditions or occurrences generally recognized by competent licensees that have negative impact on the value of the real estate, significantly reduce the structural integrity of improvements to real property or present a significant health risk to occupants of the property[.]" Tenn. Code Ann.

_____

[4] Section 62-13-405 addresses the situation in which one party is not represented by a real estate agent and is inapplicable here. *See* **Konop v. Henry**, No. M2010-00037-COA-R3-CV, 2010 WL 3269988, at *4 n.8 (Tenn. Ct. App. Aug. 18, 2010).

§ 62-13-102(2).

In sum, a real estate license has a duty under both Acts to disclose "adverse facts" of which the licensee has actual knowledge or notice. Tenn. Code Ann. § 62-13-403, § 66-5-206. Both Acts define adverse facts as "conditions or occurrences generally recognized by competent licensees that . . . significantly reduce the structural integrity of improvements to real property or present a significant health risk to occupants of the property[.]" Tenn. Code Ann. § 62-13-102(2); § 66-5-206. However, the definition of adverse facts found in the Real Estate Broker License Act of 1973 also contains a third prong, for conditions or occurrences that "have negative impact on the value of the real estate." Tenn. Code Ann. § 62-13-102(2).

In the case before us, the parties disagree as to which definition of "adverse facts" is applicable to the Ledbetters' claim. Of course, the Ledbetters argue that the broader definition found in § 62-13-403 of the Real Estate Broker License Act applies. Conversely, Ms. Lipscomb appears to argue that the broader definition found in § 62-13-403 is never applicable to a real estate licensee because this Court stated in ***Odom v. Oliver***, 310 S.W.3d 344, 352 (Tenn. Ct. App. 2009), "The Tennessee Residential Disclosure Act provides for a homebuyer's exclusive remedy against a real estate licensee. Tenn. Code Ann. § 66–5–206 (2004)."[5] Ms. Lipscomb interprets this statement to mean that "the sole avenue for recovery against a real estate licensee is the Tennessee Residential Property Disclosure Act." However, as explained above, the Residential Property Disclosure Act specifically recognizes and references the duties found in § 62-13-403, the Real Estate Broker License Act of 1973. Section 66-5-208(d)(2) states that nothing in that subsection should be construed "to exempt or excuse a real estate licensee from making any of the disclosures required by § 62-13-403, § 62-13-405 or § 66-5-206, nor shall it be construed to remove, limit or otherwise affect any remedy provided by law for such a failure to disclose." Therefore, the Residential Property Disclosure Act does not preclude a remedy for a real estate licensee's failure to disclose adverse facts in accordance with § 62-13-403. Instead, the Residential Property Disclosure Act specifically "provides *for*" such a remedy.

A similar argument was rejected by the Middle Section of this Court in ***Konop v. Henry***, No. M2010-00037-COA-R3-CV, 2010 WL 3269988 (Tenn. Ct. App. Aug. 18, 2010). In that case, home purchasers alleged in their complaint that the sellers' real estate agents breached a "duty to disclose," without reference to any specific statutory duty, and the trial court applied the duties set forth in § 62-13-403 of the Real Estate Broker License Act of 1973. ***Id.*** at *1. On appeal, the purchasers argued that this was erroneous because "'a homebuyer's exclusive remedy against a real estate licensee' is provided by the Tennessee

_____

[5] In ***Odom***, there was no issue raised or discussed regarding section 66-5-208(d), or the sections it references, such as 62-13-403.

Residential Disclosure Act at Tenn. Code Ann. § 66-5-206." *Id.* The Middle Section rejected this argument and applied the duties found in § 62-13-403. The Court noted that section 66-5-208(d)(2) of the Residential Property Disclosure Act specifically references the duties imposed by section 62-13-403 of the Real Estate Broker License Act. Accordingly, the Court concluded that "the interpretation and application of section 62-13-403 is consistent with the interpretation and application of Tenn. Code Ann. § 66-5-206." *Id.* at *1 n.6. Because the complaint in *Konop* simply alleged that the agents had breached a "duty to disclose," the Court found it appropriate to apply the duty, and the broader definition of adverse facts, found in the Real Estate Broker License Act because that definition of adverse facts was "more comprehensive." *Id.* at *4.

We therefore reject the notion that the sole avenue for recovery against a real estate licensee is a claim for violation of the Residential Property Disclosure Act. Pursuant to section 66-5-208(d), and as explained in *Konop*, we conclude that a real estate licensee is not excused from making the disclosures required by § 62-13-403 of the Real Estate Broker License Act, and the Residential Property Disclosure Act does not remove or otherwise affect "any remedy provided by law for such a failure to disclose." *See* Tenn. Code Ann. § 66-5-208(d)(2).

Nevertheless, we find that Ms. Lipscomb has the better argument regarding which duty and definition of "adverse facts" applies to the Ledbetters' claim in the case at bar. This case is distinguishable from the unique facts before the Court in *Konop*. In that case, the complaint only generally alleged that the agents had breached their "duty to disclose," without reference to any specific statutory duty. In analyzing that claim, the trial court applied the "more comprehensive" definition of adverse facts found in the Real Estate Broker License Act, and on appeal, the Middle Section affirmed. In the case before us, the Ledbetters' complaint specifically alleged that Ms. Lipscomb had "violated the Tennessee Residential Disclosure Act at Tenn. Code Ann. § 66-5-201, et seq., by failing to disclose [her] knowledge of the [defects.]" Because the Ledbetters alleged a specific statutory violation, we believe the trial court properly applied the duties and definitions found within the Residential Property Disclosure Act itself. Again, pursuant to section 66-5-208(d), the Ledbetters could have alleged a violation of the duties imposed by section 62-13-403 of the Real Estate Broker License Act, because the Residential Property Disclosure Act does not "exempt or excuse a real estate licensee from making any of the disclosures required by § 62-13-403," nor does it "remove, limit or otherwise affect any remedy provided by law for such a failure to disclose." However, the Ledbetters' complaint failed to allege such a violation, and they instead chose to proceed with a claim under the Residential Property Disclosure Act. The Ledbetters' complaint did not mention the Real Estate Broker License Act. Their attorney argued, for the first time, at the hearing on the motion for summary judgment that the definition of adverse facts found in the Real Estate Broker License Act

should apply to the claim they had asserted under the Residential Property Disclosure Act.[6] We find no authority for the notion that the trial court was required to apply the duty and definitions found in the Real Estate Broker License Act, when the complaint alleged a specific statutory violation of the Residential Property Disclosure Act. *See **Odom***, 310 S.W.3d at 352 (applying section 66-5-206 where the complaint alleged fraudulent concealment and violation of the Tennessee Residential Property Disclosure Act). On appeal, we will likewise apply the duty, and the definition of adverse facts, found within the Act itself, at Tennessee Code Annotated section 66-5-206.

> To recap, the Residential Property Disclosure Act provides, in relevant part: A real estate licensee will further be subject to a cause of action for damages or equitable relief for failing to disclose adverse facts of which the licensee has actual knowledge or notice. "Adverse facts" means conditions or occurrences generally recognized by competent licensees that significantly reduce the structural integrity of improvements to real property, or present a significant health risk to occupants of the property.

Tenn. Code Ann. § 66-5-206.[7] Ms. Lipscomb's motion for summary judgment was supported by her own affidavit, in which she stated, "I had no knowledge of any defects in the property or of any adverse information concerning the structural integrity of the property." She further stated that the Ledbetters had personally viewed the property prior to closing and hired a home inspector who found no problems with the foundation. Ms. Lipscomb filed the home inspector's report from November 2008 which classified the foundation as "acceptable," the most favorable rating available on the report. In addition, Ms. Lipscomb submitted the report from the engineer who had examined the home for any structural deficiencies in May 2008, approximately six months prior to the Ledbetters' purchase of the home, which stated that the house was structurally sound.

In response, the Ledbetters pointed out that Ms. Lipscomb had knowledge of past structural defects and repairs at the property. They submitted the report from the structural inspection completed in November 2007, one year prior to their purchase of the property, which identified numerous structural issues and recommended several repairs, in addition to the reports from two follow-up inspections. Ms. Lipscomb was the listing agent for the property throughout this period of time, and her live-in boyfriend completed the repairs. She admitted to knowing that a structural inspection was performed at the house and that some

---

[6] There was no attempt to amend the complaint to assert an additional claim under the Real Estate Broker License Act.

[7] The parties do not argue that the "health risk" prong of the definition is applicable in this case.

additional work on the foundation was necessary in response thereto. However, she characterized the work simply as "code upgrades" rather than repairs, and she testified that, in any event, it was her understanding that all of the recommended work had been completed by at least May of 2008, and that the house then complied with the applicable codes. Still, the Ledbetters argued that a genuine issue of material fact remained regarding whether Ms. Lipscomb had knowledge of "adverse facts" that should have been disclosed to them prior to the sale.

Again, under section 66-5-206, as applied to the facts of this case, the central question is whether Ms. Lipscomb had knowledge of "conditions or occurrences generally recognized by competent licensees that *significantly reduce the structural integrity* of improvements to real property." (Emphasis added). We conclude that she did not. We find that the evidence submitted by Ms. Lipscomb in support of her motion for summary judgment "tend[ed] to disprove an essential factual claim" made by the Ledbetters, and therefore, it negated an essential element of the Ledbetters' claim and shifted the burden of production. *See Martin*, 271 S.W.3d at 83. In response, the Ledbetters failed to demonstrate that the previous defects and repairs significantly reduced the structural integrity of the home. The undisputed facts establish that after the recommended repairs were completed, an engineer examined the home for any structural deficiencies and found that it was structurally sound. That same month, a second engineering company inspected the home and found that it "did not exhibit any structural issues" and that the "overall structural condition of the home" was "good." Then, prior to closing, the home inspector hired by the Ledbetters inspected the property and rated the foundation as "acceptable," which was the highest rating available on the report. Finally, Mr. Ledbetter himself admitted during his deposition that he had no reason to believe that the house was not structurally sound when it was purchased. Considering all of the evidence, we conclude that a reasonable person could reach but one conclusion – Ms. Lipscomb did not have knowledge of conditions or occurrences that "significantly reduce[d] the structural integrity" of the home. Accordingly, no material factual dispute exists, and we find as a matter of law that Ms. Lipscomb did not have knowledge of "adverse facts" within the meaning of section 66-5-206 of the Residential Property Disclosure Act.

We note that the Ledbetters argue on appeal that "[w]hether the house was structurally sound at the time of closing is irrelevant. Rather, the problem is that the structural repairs that were made to the home, which required significant manipulation of the foundation of the home, eventually resulted in structural defects, which may not have been observable or even in existence at the time of closing." The problem with this argument is that there is no evidence in the record to support it. Ms. Lipscomb submitted numerous reports regarding the structural integrity of the home in support of her motion for summary judgment. We cannot simply assume, based upon the assertions in the Ledbetters' brief on appeal, that the structural integrity of the home was significantly reduced by the repairs, when the evidence

in the record demonstrates that it was not.  There is simply no evidence in the record from which we can make this assumption.

## V.   CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed. All other issues are pretermitted.  Costs of this appeal are taxed to the appellants, Jamie and Charlene Ledbetter, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.