# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 13, 2010 Session

## MICHAEL KLINE, ET AL. v. CLUB 616, INC., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
#### No. 92987 T.D.     John R. McCarroll, Judge

### No. W2009-01599-COA-R3-CV - Filed November 23, 2010

This appeal involves a lawsuit filed against a nightclub and several individuals who, according to Plaintiffs, were owners of the nightclub at the time of the events giving rise to this lawsuit. The trial court granted summary judgment to two of those individuals, finding that they had produced "conclusive" evidence that they had no ownership interest in the club at the relevant time. Plaintiffs appeal. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Stevan L. Black, Vickie Hardy Jones, Memphis, Tennessee, for the appellants, Michael Kline and Annette Kline

Dale H. Tuttle, James F. Horner, Jr., Memphis, Tennessee, for the appellee, Gerald Chittom

William M. Jeter, Memphis, TN, for the appellee, Ralph Lunati

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

On February 18, 1998, Michael Kline and Annette Kline ("Plaintiffs") filed this wrongful death lawsuit individually and as next of kin of their deceased son, Kevin Kline, against Club 616, Inc., Wilbur Hensley, Ralph Lunati, and Gerald Chittom, among others. Plaintiffs alleged that Kevin and three of his friends were served alcohol at Club 616 on the night of February 19, 1997, which was "College Appreciation Night" at Club 616.  Plaintiffs alleged that the young men were only required to show their college student identification cards at the door, which did not contain age-identifying information, and that upon paying the cover charge, they were allowed to drink all the free beer they desired between 9:00 p.m. and midnight.  After departing from Club 616, one of the young men, who was underage and allegedly intoxicated, drove the vehicle in which Kevin and the other men were passengers. The men were involved in a tragic car accident, and two days later, Kevin died from injuries that he sustained in the accident.

Plaintiffs' complaint alleged, upon information and belief, that Wilbur Hensley was the president of Club 616, Inc., and that he had an ownership interest in Club 616, Inc. at all relevant times.  Plaintiffs also alleged, upon information and belief, that Ralph Lunati and Gerald Chittom had an ownership interest in Club 616, Inc. at all relevant times.  Plaintiffs claimed that Club 616, Inc. was a mere instrumentality or alter ego of its shareholders–Hensley, Lunati, and Chittom–such that the separate identity of the corporation should be disregarded and the individual shareholders held liable.  Plaintiffs further alleged that Lunati owned the property where Club 616 was located, and they alleged various theories of liability against him based upon his capacity as Club 616's landlord.

In an answer filed on behalf of the defendants, Club 616, Inc., Hensley, Lunati, and Chittom admitted that Hensley was the president of Club 616, Inc.  However, they alleged that Hensley was the *sole* shareholder of Club 616, Inc., and that Lunati and Chittom had no ownership interest in the corporation at the times alleged in the complaint.  Hensley submitted an affidavit stating that he is the sole stockholder of Club 616, Inc., and had been at all times pertinent to the complaint, and that he serves as the corporation's president. Hensley's affidavit further stated that Lunati and Chittom have no ownership interest in Club 616, Inc., nor did they have any such interest, stock, or shares in the corporation at any time pertinent to the complaint.  Lunati submitted his own an affidavit stating that he owns the real property on which Club 616 is located and acts as Club 616's landlord.  However, he stated that he owns no stock, shares, or ownership interest in Club 616, Inc., and that he has no authority to act in a managerial capacity in connection with Club 616, Inc.  Chittom also stated by affidavit that he has no stock, shares, or ownership interest in Club 616, Inc., nor

did he have any such interest at any time relevant to the complaint.

In response to Plaintiffs' discovery requests, Club 616, Inc. stated that the original copies of its charter, bylaws, and other corporate records, in addition to its stock certificates and stock registers, were destroyed in a fire at Club 616 in August 1994. Club 616, Inc. also indicated that it had no shareholder agreements and no records pertaining to shareholder distributions or dividends.

The individual defendants provided varying descriptions of Club 616, Inc.'s ownership. Hensley's interrogatory responses stated that he began working at Club 616 as its general manager in 1990, and that he purchased all outstanding stock of the corporation in January 1994 to become its sole owner. He stated that the stock certificates evidencing his ownership and all documents relating to his acquisition of Club 616, Inc. were destroyed in the August 1994 fire.

Lunati's interrogatory answers stated that he had not owned an interest in Club 616, Inc. at any point, although he stated that it was his belief that he was named to the corporation's Board of Directors when it was formed in the late 1980's or early 1990's. Lunati stated that the original incorporator of Club 616, Inc. was Mr. Steve Cooper, and that Cooper sold the corporation to Hensley in approximately 1993.

Chittom's answers to interrogatories stated that he held stock in Club 616, Inc., as a 33% partner, from its inception in approximately 1988 until 1994. He stated that he believed that Steve Cooper and his sister were also stockholders, but that he had no specific recollection. Chittom stated that in 1994, his interest was liquidated when the corporation was sold to Hensley.

In response to Plaintiffs' requests for admissions, all four defendants denied that Lunati, Chittom, and Steve Cooper were the original incorporators of Club 616, Inc. However, they then admitted that according to corporate records, Lunati, Chittom, and Steve Cooper "were equal shareholders from approximately the time of the initial incorporation to approximately the end of 1992 at which time all stock in Club 616, Inc. was transferred to Wilbur Hensley."

Lunati filed a motion for summary judgment on August 29, 2001, claiming that there was no genuine issue as to any material fact and that he was entitled to judgment as a matter of law. Lunati claimed that he had affirmatively established that he had no stock, shares, or ownership interest in Club 616, Inc. at the time of the accident in February 1997. Chittom subsequently filed a motion for summary judgment as well, claiming that it was undisputed that he had sold his interest in Club 616, Inc., and that Hensley was its sole owner at the time

of the accident in February 1997.

Lunati testified during his deposition that he is in the real estate business and the nightclub business, and that he is involved with clubs in several states. Lunati testified that he had been involved with thousands of deals over about twenty years, and that he could not remember who were the stockholders of Club 616, Inc. Lunati's attorney then informed Lunati, "[f]or the record," that his name is listed on the original charter of Club 616, Inc., and Lunati acknowledged that it was possible that his name was on the charter. Lunati said he remembered that he and Steve Cooper owned the property and that Hensley was hired to run the club. Lunati said he thought that Chittom also owned part of Club 616, Inc. However, Lunati testified that Steve Cooper "worked out a deal to sell it to [Hensley]" in about 1992 or 1993. He said, "If I owned part of it he sold it." Lunati said that he was not involved in the deal at all, and that he sometimes let Steve Cooper "do a whole deal like that hi[m]self" because they were partners. Lunati was not sure of the amount for which his interest in Club 616, Inc. was sold. He explained, "Well, the deal was, I believe, as he made money with the club he was going to pay on the sale, and I believe he did pay some money on it over the years." Lunati said that he was "pretty sure" he received some money from the sale. Lunati testified that the payment arrangement would have been that Hensley would pay the notes to Steve Cooper, then Cooper would have put the money into a corporate account and disbursed part of it to him. Lunati said that he would have received such payments "probably a few years after it was sold."

Lunati submitted another affidavit in support of his motion for summary judgment, in which he stated that he had not owned any stock, shares, or ownership interest in Club 616, Inc. since 1992 or 1993, when his interest was sold to Hensley. He also stated that he had received no income from Club 616 since his interest was sold in 1992 or 1993.

During Hensley's deposition, he testified that he was "not sure" whether Chittom and Lunati ever owned an interest in Club 616, Inc. He conceded that he had worked at Club 616 "since the day they opened the doors in 1989," but he said that it was not his responsibility to know who the owners were. He then acknowledged that he had seen the names of Steve Cooper, Lunati, and Chittom on the corporate charter. At another point in his deposition, Hensley testified that Lunati had owned an interest in Club 616 "in the early days," from when it opened in approximately 1989 until Hensley purchased the club in late 1993 or early 1994. Hensley testified that he had purchased Club 616, Inc. from Steve Cooper, and he said that he did not know when Lunati ever sold his interest.

Hensley testified that he did not put any money down on the purchase of Club 616, Inc. and that he signed a note instead. Hensley said that he did not remember how much he paid for Club 616, Inc., whom he paid, or when the payments were completed, but he said

he believed that Steve Cooper had been paid long ago. He testified that the documents relating to his purchase of Club 616, Inc. burned in the fire in 1994.

Hensley testified that Lunati was Club 616's landlord, and that he still owed Lunati back rent. Hensley also testified that he had taken a loan from Lunati and/or from another club owned by Lunati in order to pay deposits on bands at Club 616. He did not remember the date or amount of the loan, but he said he thought it was less than a hundred thousand dollars. He said he did not sign a note when he obtained the loan.

Hensley testified that the only occasion when Club 616, Inc. had made payments to Chittom was when Club 616, Inc. employed Chittom after the 1994 fire in order to help in the rebuilding effort. He said that Chittom sold him some equipment and did manual labor. Hensley did not remember how he determined what Chittom would be paid. He said that he used insurance proceeds to pay Chittom and everyone else during that time. However, he testified that Lunati's building insurance "was the only insurance we had." He said that Lunati also did manual labor after the fire.

During Chittom's deposition, he testified that he, Lunati, and Steve Cooper incorporated Club 616, Inc., and owned it together at one time. Chittom testified that he sold his interest in Club 616, Inc. in or before 1992. He testified that Club 616, Inc. paid him for his interest, and that his interest was then traded or conveyed to Hensley. Chittom initially testified that he received approximately $40,000 to $45,000 for his interest, but he later said that it may have been $46,000 or $50,000. Chittom said he received the money over a period of "maybe three years," stating, "Nightclubs are very seldom conveyed by one single transaction." Chittom testified that he did not have a copy of any documents from the transaction. He explained, "There wasn't a closing, per se. Steve Cooper and this gentleman here, Wilbur Hensley, made an arrangement to buy the club out of duress or out of whatever it was, and I wound up with some money, and I was happy. But as far as–I mean, it being done in a very orthodox, rigidly-controlled, businesslike manner, it was done nothing like that, sir."

Chittom submitted a supplemental affidavit, in which he stated that he had not received any income from Club 616, Inc. since 1993 other than payment for selling his interest to Hensley. However, he acknowledged during his deposition that he was paid by Club 616, Inc. for helping to rebuild it after the fire in 1994. Chittom testified that he helped to rebuild Club 616 "[i]n order to help my friend out." He said he "went in there, helped to gut the place, saw to it that we found some people that were reasonable, and he approved, as far as doing the rebuilding," and "hustled some equipment to find him some equipment because all his motors and his electrical stuff had been burned up[.]"

Plaintiffs filed responses to the motions for summary judgment, in which they contended that genuine issues of fact remained regarding whether Lunati and Chittom had been divested of their interests in Club 616, Inc. They pointed out the various inconsistencies in the testimony of Hensley, Lunati, and Chittom, and challenged the defendants' credibility. During Hensley's deposition, he said that he, Lunati, and Chittom had been close friends for a long time, and that they see each other on a weekly basis and even go Christmas shopping together every year. Chittom testified that prior to owning Club 616, he, Lunati, and Steve Cooper had owned another club that Hensley managed. At the time of his deposition, Hensley was employed by Chittom managing another business.

Plaintiffs also pointed out that no documentary evidence of an ownership transfer had been produced. In addition, they contended that other documentary evidence linked Lunati and Chittom to Club 616, Inc. and showed that they received financial benefits from Club 616, Inc. after the defendants claimed to have sold their interests to Hensley. Again, Hensley, Lunati, and Chittom differed in their recollections of when Lunati and Chittom sold their interests in Club 616, Inc., stating dates ranging between 1992 and early 1994. Plaintiffs produced a check obtained during discovery that was drawn on the account of a corporation wholly owned by Lunati, and signed by Lunati, made payable to Chittom, in the amount of $10,000 with the notation, "pmt. on Bus 616." This check was dated December 15, 1994. That same date, Lunati had written another check payable to himself for $20,000, with the notation, "pmt. on busi 616." On August 3, 1995, Lunati had signed two checks drawn on his corporate account payable to Chittom and to Hensley in the amounts of $5,000 each. On August 29, 1995, he wrote another check to Chittom for $5,000. Another check, dated January 1, 1996, and in the amount of $7,242.00, was drawn on Lunati's corporate account and signed by him with the notation "Six One Six Workmans Comp Insurance." On January 8, 1996, Lunati wrote another check to Chittom in the amount of $7,500. On February 12, 1996, Lunati wrote a check to Chittom in the amount of $4,000, with the notation, "mgmt. fees 6-1-6." On March 28, 1996, he wrote another check to Chittom for $4,000, with the notation, "mgmt. fees 6-1-6." And again, on May 8, 1996, Lunati wrote another check to Chittom for $4,000, with the same "mgmt. fees 6-1-6" notation. This last check was some nine months before the February 1997 accident.

Plaintiffs also produced a credit application submitted by Hensley on behalf of Club 616, Inc., at a concrete company on November 17, 1994. On that application, Hensley listed Chittom not only as an "authorized buyer" on Club 616, Inc.'s account, but also in a section designated for Club 616, Inc.'s "Company Officers or Partners." Another credit application submitted at a paint store that same day listed Chittom as a person authorized to sign on Club 616, Inc.'s account.

Plaintiffs also relied upon checks made payable to Chittom directly from Club 616, Inc.'s bank account in the amount of $4,825 on February 20, 1995; $4,738 on June 1, 1995; and $4,000 on October 16, 1995. A notation on the June 1 check appears to read, "Eagles Little Rock Ticket Sales 1845.00 Bud-Wilbur Profit," but the other two checks contain no notation.

Another transaction that Plaintiffs relied upon involved a "Letter of Intent" to purchase a corporation called Hard Times Café, Inc. that was signed by Chittom on November 14, 1996. It stated that it was the intention of "a now forming Tennessee corporation" to purchase Hard Times Café, Inc., for $100,000, with the price to be split equally between five partners. Included with the letter of intent was a $5,000 deposit check drawn on the account of Club 616, Inc. There was also a handwritten note with the check that stated:

> Per Bud –
> Blue City
> Café,
>
> 616 - $5,000.00
> Hard Times
> Café, Inc.

During his deposition, Chittom denied that this transaction demonstrated that he was directing the payment of money from Club 616, Inc.'s account. Chittom claimed that Hensley was originally one of the five partners who intended to purchase Hard Times Café, Inc., but that he later backed out, and the transaction was not completed.

Plaintiffs also submitted a "Dues Invoice" from the Memphis Convention and Visitors Bureau that was addressed to Chittom as the "Customer." It was dated July 1, 1997, and listed a balance of $300 for July to June. A handwritten note on the invoice stated: "(Blues City Café, Six-One-Six, Shooters)."[1] A post-it note dated July 15, 1997, that was attached to the invoice and addressed to an employee at Chittom's accountant's office states, "Please take $100 from: Blues City Café[,] 616[,] Shooters." On July 16, 1997, a $100 check was drawn on Club 616, Inc.'s account and made payable to the Memphis Convention and Visitors Bureau. Chittom attempted to explain Club 616, Inc.'s involvement in this transaction by stating that he had encouraged Hensley to enroll Club 616, Inc. with the Convention and Visitors Bureau, and he said that Hensley had agreed to join and pay the

_____

[1] Chittom testified during his deposition that he had an ownership interest in Blues City Café and in the property where Shooters is located.

$100 dues. Hensley and Chittom used the same accountant, and Chittom claimed that the accountant was simply directed to pay Club 616, Inc.'s share of the dues because Hensley had already authorized the transaction.

Plaintiffs submitted several checks from 1997 that were drawn on the bank account of a separate corporation owned by Hensley, called S&W Enterprises, which serves as the management company for Club 616, Inc. The checks were made payable to a woman who worked for Chittom, and she had endorsed the checks for deposit only to a separate corporation that was owned by Chittom. At his deposition, Chittom initially testified that he had had no involvement with S&W Enterprises, and he indicated that he really did not know what the company was or who owned it. When Chittom was asked about the checks his employee received from S&W Enterprises, he then conceded that some of his employees received their paychecks from S&W Enterprises for a short period of time. Chittom said that he would pay S&W and let S&W pay his employees in order to lower his worker's compensation rates. He explained that the checks at issue were endorsed to his corporation because the employee would cash her checks at work by putting them in with his corporation's deposits.

Plaintiffs also relied upon a check written on Club 616, Inc.'s bank account on June 26, 1997, made payable to Blues City Café, Inc., which was a corporation owned by Chittom, in the amount of $1,087.47. Chittom testified that this check was probably regarding the sale of "some equipment or something like that, perhaps." Chittom said that Hensley sent his bands to eat at Chittom's restaurant, and that Chittom got two speakers from Hensley while Hensley "had some things that [Chittom] sent him." He said, "I think the balance was about that."

Plaintiffs also relied upon numerous checks written to Lunati's daughter between June 19, 1997, and April 3, 1998, from Club 616, Inc.'s bank account. During that period of less than ten months, Hensley wrote approximately thirty-one checks from Club 616, Inc.'s account to Lunati's daughter for $1,000 each. Lunati's daughter was employed as the bookkeeper for one of Lunati's corporations. She never worked for Club 616, Inc. During her deposition, Lunati's daughter testified that these $1,000 checks were written to her because she was collecting rent for her father, and Club 616, Inc. was behind on its rent and attempting to catch up. She acknowledged that Club 616, Inc.'s monthly rent obligation was $2,500 a month, and that she deposited the regular rent payments into her father's personal account or into his corporation's account. Lunati's daughter had deposited the $1,000 checks into her own personal bank account. She said that she did this because the checks were made out to her, presumably by mistake, so she would deposit each of the checks into her own account and then write a check to her father for $1,000.

On November 23, 2005, Judge James Russell entered an order denying the motions for summary judgment filed by Lunati and Chittom. After discussing the testimony and numerous specific transactions relied upon by Plaintiffs, the court noted that there was no "empirical evidence" such as closing documents or tax returns or anything else that would support the defendants' position that Lunati and Chittom sold their interests to Hensley. Judge Russell went on to state, "There is, however, an abundance of other evidence, both circumstantial and direct, to support the plaintiffs' theories and contentions combined with conflicting testimony from Hensley, Chittom, Lunati, . . . and [Lunati's daughter,] such that if believed by the finder of fact would support a jury verdict in the plaintiffs' favor and against these defendants on this issue." In sum, the court found that genuine issues existed as to material facts, which precluded summary judgment.

Less than two weeks after the trial court entered its order denying the motions for summary judgment, Chittom filed a second motion for summary judgment along with additional affidavits and exhibits. Chittom contended that this additional evidence clearly established that he had no interest in or involvement with Club 616, Inc. at any material time, such that he had negated an essential element of Plaintiffs' claim.

Chittom submitted the affidavit of Danny Belew, who stated that he was employed as a manager at Club 616 from 1989 until 1999. He stated that he "was aware that after 1993 Wilbur Hensley was the sole owner and stockholder of Club 616, Inc." He also stated that he served as the secretary of Club 616, Inc. after 1993, and that he knew of no involvement of Lunati or Chittom in Club 616, Inc. after 1993. Chittom also submitted the affidavit of Nathan Rosengarten, who stated that he was employed as head of security at Club 616 from approximately 1996 to 1999. He said that Lunati and Chittom were not in any way involved in the operation or management of Club 616 when he was employed there.

In addition, Chittom submitted the affidavit of Jack Joffre, who stated that he had served as the accountant for Club 616, Inc. and prepared its tax returns since 1993.[2] Mr.

---

[2] We note that the affidavit of Jack Joffre that was attached to Chittom's December 5, 2005 motion for summary judgment was not signed, dated, or notarized. However, Plaintiffs filed a motion to supplement the record on appeal, claiming that numerous pleadings that should have been included in the record had been omitted. A consent order was entered by the trial court, granting the motion to supplement the record, and an additional volume of documents was added to the record on appeal. Some of those documents were previously included in other volumes, while others were not. The supplemental record includes another "Affidavit of Jack Joffre in Support of Second Motion for Summary Judgment on Behalf of Gerald Chittom." This affidavit is signed, notarized, and dated December 6, 2005, and it contains slight variations in the language utilized in the previous affidavit. Because this second affidavit was approved by the parties and the trial court as properly included in the record on appeal, we will consider it rather than the unsigned

(continued...)

Joffre stated that he was also familiar with the corporate tax return of Club 616, Inc. for 1992, and that the 1992 return showed that there were three stockholders–Steve Cooper, Chittom, and Lunati–each owning one-third interests. Mr. Joffre stated, "At the end of 1992, I was advised the corporate stock was transferred to Wilbur Hensley 100% and I prepared the corporate 1993 tax return reflecting this transfer." Mr. Joffre stated that the corporate tax returns of Club 616, Inc., for the years 1993 to 1998 reflected 100% ownership by Hensley. Selected pages of Club 616, Inc.'s unsigned tax returns from 1993 to 1998 were attached to the affidavit. They listed Hensley's percentage of stock ownership as "100.0000%."

Mr. Joffre further stated that he had prepared the individual tax returns for Chittom from 1993 to 1998. Mr. Joffre stated that Chittom's returns reflected his receipt of funds from a Club 616, Inc. stock transfer in the amount of $23,333 in 1993; $26,000 in 1994; and $8,825 in "management fees" in 1995. He stated that Chittom's 1996 return showed no other income from Club 616, Inc. Selected pages of Chittom's returns were attached as well. His 1993 return reflected a long-term capital gain of $23,333, and a more detailed worksheet listed the description of the property sold as "Club 616" and the date of the sale as January 1, 1993. One page of Chittom's 1994 return was attached, which listed a long-term capital gain of $26,000, but there was no information regarding the source of the gain. **(p.101).** One page from Chittom's 1995 return was provided, which listed under "Gross Receipts" $8,825 attributable to "Club 616." The pages provided from his 1996 return did not mention Club 616.

Mr. Joffre stated that his office also prepared the corporate annual reports for Club 616, Inc., from 1994 to 1996, and that such reports listed Hensley as the corporation's president and Mr. Belew as secretary. Copies of these reports, although unsigned, were attached to Mr. Joffre's affidavit.

Chittom also submitted another affidavit of his own, in which he stated that he had received no income from Club 616 since 1993, except for the payments he received from the sale of his stock and the labor fees he received in 1995 for helping to remodel the club after the fire.

Plaintiffs filed a response to Chittom's second motion for summary judgment, contending that the tax returns he presented were not conclusive evidence of ownership in light of the other contrary evidence that had been produced. They contended that Chittom had failed to demonstrate that he ever sold his entire interest in Club 616, Inc., and that genuine issues of material fact remained regarding the issue of ownership. Plaintiffs pointed

---

[2](...continued)
version in the original technical record.

out that Mr. Joffre had prepared the tax returns in reliance upon statements made by others, and that he had no firsthand knowledge of the sale. They claimed that Chittom's subsequent receipt of "management fees" suggested that he retained an interest in Club 616, Inc. They also noted that Chittom's individual tax returns did not include all of the income he had received from Club 616, as evidenced by the checks Plaintiffs had previously submitted. Plaintiffs further noted that Chittom had not produced his income tax returns from 1997 to 1999, and they claimed that an examination of such returns would be necessary in order to determine whether Chittom received income from Club 616, Inc. during the relevant time frame. Finally, Plaintiffs contended that there was ample other evidence from which a jury could conclude that Chittom continued to own an interest and financially benefit from Club 616, Inc., even if he was receiving money "through the back door."

Lunati subsequently filed a second motion for summary judgment as well, in which he incorporated by reference the motion and supporting documentation previously filed by Chittom.

Following a motion for disqualification filed by the defendants, the case was transferred to another division of the circuit court. After a hearing, Judge John McCarroll entered an order granting the motions for summary judgment filed by Chittom and Lunati, finding that there was no genuine issue of material fact and that neither Lunati nor Chittom had an ownership interest in Club 616, Inc. during the relevant time period. The court's order states,

> The Court finds that the tax returns which were filed, accepted and certified that Defendant Hensley was 100% owner of Club 616, Inc. for the years 1993 through 1998 are conclusive. The Court declines to draw negative inferences from the documents produced by the Defendants and relied upon by Plaintiffs to rebut the Defendants' contention that Defendant Wilbur Hensley was the sole owner of Club 616, Inc. in February 1997. The Court finds that the various documents relied upon by Plaintiffs do not rise to the level of negating the affidavits filed by Defendants in support of their motions for summary judgment.

The trial court noted that Plaintiffs' claims against Lunati based upon his role as Club 616's landlord would remain pending. The court certified its order as final pursuant to Tennessee Rule of Civil Procedure 54.02, and Plaintiffs timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment to Chittom and in granting partial summary judgment to Lunati because genuine issues of

material fact exist regarding whether they continued to own an interest in Club 616, Inc. in February 1997. We agree and accordingly reverse the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "[T]rial courts should grant properly made and supported summary judgment motions when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion–that the moving party is entitled to a judgment as a matter of law." *Id.* (citing *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

Summary judgment is not permitted if the case's determinative facts are in dispute. *Id.* at 513-14. "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Martin*, 271 S.W.3d at 84 (quoting *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). In other words, "[i]f reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." *Green*, 293 S.W.3d at 514 (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." *Id.* (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)). The motion for summary judgment should be denied if there is any doubt regarding whether a genuine issue of fact exists. *Id.* (citing *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 41 (Tenn. 2005); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). "Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd*, 847 S.W.2d at 210-11).

"[A] properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin*, 271 S.W.3d at 83 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley*, 960 S.W.2d at 588). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id.* (citing *Hannan*, 270 S.W.3d at 5). Presenting evidence that raises doubts about the nonmoving party's ability to prove his or her claim is insufficient. *Id.* (citing *McCarley*, 960 S.W.2d at 588). It is not enough for the moving party to simply cast doubt on the other party's ability to prove an element at trial. *Hannan*, 270 S.W.3d at 8. "The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Martin*, 271 S.W.3d at 84 (citing *Hannan*, 270 S.W.3d at 5). In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Id.* (citing *Byrd*, 847 S.W.2d at 215).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Id.* However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples*, 15 S.W.3d at 89).

## IV. DISCUSSION

On appeal, Chittom and Lunati contend that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law because they submitted a "plethora of evidence" affirmatively establishing that they maintained no ownership interest in Club 616, Inc. at the time of the incident in February 1997. Specifically, they point to their own testimony, the testimony of Hensley, Danny Belew, and Nathan Rosengarten, and the affidavit and exhibits submitted by Mr. Joffre.

It is undisputed that both Chittom and Lunati were shareholders of Club 616, Inc. when it was initially incorporated. Both men testified that they sold their interests sometime between 1992 and early 1994. There is evidence to support their testimony, such as the tax returns produced by Mr. Joffre and the affidavits of Belew and Rosengarten. However, there is also, as Judge Russell found, an abundance of other evidence to support Plaintiffs' contention that Lunati and Chittom may have continued to own an interest in Club 616, Inc.,

after they claim to have sold their interests. On December 15, 1994, Lunati wrote checks from his corporation's account to himself and to Chittom, for $20,000 and $10,000, respectively, each with the notation, "pmt. on Bus 616." Chittom also received checks written directly from Club 616, Inc.'s bank account in the amounts of $4,825 on February 20, 1995; $4,738 on June 1, 1995; and $4,000 on October 16, 1995. On January 1, 1996, Lunati signed a check drawn on his corporate account for $7,242.00, with the notation "Six One Six Workmans Comp Insurance." On February 12, March 28, and May 8, 1996, Lunati wrote checks to Chittom in the amount of $4,000 each, with a notation on each check stating, "mgmt. fees 6-1-6." Still, Chittom's 1996 income tax return reported no income from Club 616, Inc.

Numerous other checks were presented without notations or explanations. Then, there is the credit application signed by Hensley on November 17, 1994, on which he listed Chittom not only as an "authorized buyer" on Club 616, Inc.'s account, but also as one of Club 616, Inc.'s "Company Officers or Partners." Hensley also testified that after the 1994 fire, Lunati's building insurance "was the only insurance we had," and Hensley used the insurance proceeds to pay Chittom and others who helped in the rebuilding effort. There is also the July 1, 1997 "Dues Invoice" from the Memphis Convention and Visitors Bureau that was addressed to Chittom as the "Customer" and listed the dues owed for Club 616, Inc.

In addition, there were numerous other financial transactions among Chittom, Lunati, Hensley, and entities they owned, after Chittom and Lunati claim to have sold their interests in Club 616, Inc. They attempted to explain some of these transactions, but Plaintiffs contend that their explanations are not credible. We conclude that resolving the issue of ownership of Club 616, Inc. will require weighing the evidence and the assessment of credibility. We cannot engage in these tasks at the summary judgment stage. *See **Burgess v. Harley***, 934 S.W.2d 58, 66 (Tenn. Ct. App. 1996) ("Summary judgments should not be used to find facts, to resolve factual disputes, or to choose among various permissible factual inferences. Thus, courts should not weigh the evidence in summary judgment proceedings, and likewise, they should not make credibility determinations.") (citations omitted). Viewing the evidence in a light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, a reasonable person could reach different conclusions as to whether Lunati and Chittom continued to own interests in Club 616, Inc. after they claim to have sold them. Thus, genuine issues of material fact remain, and summary judgment was inappropriate.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellees, Ralph Lunati and Gerald Chittom, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.