# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 22, 2014 Session

## WILLIE CAMPBELL & ULYSSES CAMPBELL, SR. v. MEMPHIS-SHELBY COUNTY AIRPORT AUTHORITY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001981-12      Robert S. Weiss, Judge**

---

**No. W2013-01641-COA-R3-CV - Filed June 20, 2014**

---

This case involves a plaintiff who fell outside the Memphis International Airport and sued the Airport Authority for negligence. The trial court granted summary judgment to the defendant Airport Authority, finding, based on the undisputed facts, that the plaintiffs and their witnesses are unable to identify what caused the fall. Plaintiffs appeal. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Gerald S. Green, Memphis, Tennessee, for the appellants, Willie Campbell and Ulysses Campbell, Jr.

James Creswell, Jr., David I. Feigelson, Memphis, Tennessee, for the appellee, Memphis-Shelby County Airport Authority

## I.  FACTS & PROCEDURAL HISTORY

Mrs. Willie Campbell was on the premises of the Memphis International Airport on May 5, 2011, along with several members of her family, in order to view her granddaughter's art in an art exhibit at the airport.  After parking their car, Mrs. Campbell and her family members walked toward the entrance of the airport near Terminal B.  Before Mrs. Campbell reached the door, she fell and allegedly sustained serious injuries.

On May 3, 2012, Mrs. Campbell and her husband filed this lawsuit against the Memphis-Shelby County Airport Authority and other defendants.[2]  The complaint alleged that "as Plaintiff was walking up an incline at the curb outside of Terminal B, [she] fell violently to the ground because of some loose pebbles or concrete, causing plaintiff to sustain serious injuries[.]"  The complaint further alleged that Mrs. Campbell "could not prevent her fall as there were no handrails mounted and positioned at the incline."  The complaint specifically alleged that the Airport Authority was negligent because it:

a.      Failed to maintain the entryway in front of Terminal B of the Memphis International Airport in a reasonably safe condition;

b.      Allowed a crack, break and loose pebbles or concrete to remain in and on the walkway outside of Terminal B of the Memphis International Airport when defendant(s) knew, or in the exercise of reasonable care should have known, that the dangerous condition created an unreasonable risk of harm to customers and visitors to The Memphis International Airport[;]

---

[1]  Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]  The Memphis International Airport is governed and operated by the Memphis-Shelby County Airport Authority.  The complaint also named as defendants the City of Memphis, Shelby County, and "Doe 1 and Doe 2," but these defendants were eventually dismissed from the lawsuit upon entry of an order of voluntary dismissal, and they are not at issue on appeal.

c.	Failed to warn plaintiff, Willie Barksdale Campbell, of the possible danger presented by an incline with no handrails;

d.	Failed to install a nonslip surface on the incline leading to the curb outside of Terminal B; [and]

e.	Failed to otherwise exercise due care with respect to the matters alleged in this complaint.

Mrs. Campbell sought $300,000 in damages, and her husband sought $50,000 in damages for loss of consortium. The Airport Authority filed an answer and motion to dismiss, and discovery ensued. Depositions were taken of Mrs. Campbell, her husband, and two other family members who were present when Mrs. Campbell fell.

On April 9, 2013, the Airport Authority filed a motion for summary judgment, asserting that summary judgment was warranted because, among other things, neither Mrs. Campbell nor her witnesses knew what caused Mrs. Campbell to fall. The Airport Authority relied upon the deposition testimony of Mrs. Campbell, her husband, and the two other family members. Plaintiffs filed a memorandum in response to the motion for summary judgment.

On June 17, 2013, the trial court entered an order granting summary judgment to the Airport Authority. The trial court found, based upon the undisputed material facts, that neither Mrs. Campbell nor the witnesses she identified were able to testify as to what caused her to fall during the subject incident. Plaintiffs timely filed a notice of appeal.[3]

## II.   ISSUES PRESENTED

Plaintiffs present the following issues for review on appeal, which we quote from their brief:

1.	Whether or not the trial court erred when it granted the Defendant's Motion for Summary Judgment and consequently, denied Plaintiff an opportunity to present her case to a jury/fact finder who could

---

[3] After the notice of appeal was filed, this Court entered an order explaining that the order appealed was not a final judgment because, at that time, the claims against the City of Memphis, Shelby County, and Does 1 and 2 were unresolved. We directed the appellants to either obtain entry of a final judgment or show cause why this appeal should not be dismissed. The order of voluntary dismissal as to the remaining defendants was entered on December 12, 2013.

determine and assess the liability of the defendant?

2. Whether or not due process guarantees are violated when a court acts as a fact-finder and makes a pre-trial decision that denies a Plaintiff her day in court?

The Airport Authority argues that we should dismiss this appeal because the Plaintiffs "do not cite to the record in any part of their brief," as required by Tennessee Rule of Appellate Procedure 27 and also Rule 6 of the Rules of the Court of Appeals. The Airport Authority also argues that Plaintiffs' due process argument should be dismissed because (1) it was not raised in the trial court, (2) Plaintiffs failed to reproduce the challenged rule or statute in their brief in violation of Tennessee Rule of Appellate Procedure 27(e), and (3) they failed to notify the Attorney General of their constitutional challenge to a rule or statute pursuant to Tennessee Rule of Civil Procedure 24.04. Alternatively, the Airport Authority argues that the issues presented by Plaintiffs lack substantive merit. Finally, the Airport Authority asserts that this appeal is frivolous, and it seeks an award of attorney's fees on that basis.

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists." *Id.* at 514 (citing *Martin*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993)). "If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law." *Id.* (citing *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999)).

Because this lawsuit was filed in 2012, resolution of the motion for summary judgment is governed by Tennessee Code Annotated section 20-16-101, which provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.[4]

Summary judgments do not benefit from a presumption of correctness on appeal, so we must make a fresh determination that the requirements of Rule 56 have been satisfied in each case. *Green*, 293 S.W.3d at 514. "The reviewing courts must also consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Id.* (citing *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373-74 (Tenn. 2007); *Abbott v. Blount County*, 207 S.W.3d 732, 735 (Tenn. 2006)).

As a general rule, negligence cases are not amenable to disposition on summary judgment; however, summary judgment "may be used to conclude any civil case, including negligence cases, that can be and should be resolved on legal issues alone." ***Fruge v. Doe***, 952 S.W.2d 408, 410 (Tenn. 1997). Summary judgment is appropriate in a negligence case if, "from all of the facts together with the inferences to be drawn from the facts, the facts and inferences are so certain and uncontroverted that reasonable minds must agree." ***Keene v. Cracker Barrel Old Country Store, Inc.***, 853 S.W.2d 501, 502-03 (Tenn. Ct. App. 1992). "Courts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the fact-finder to make a leap of faith to find the defendant liable for the plaintiff's injury." ***Psillas v. Home Depot, U.S.A., Inc.***, 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001).

---

[4] "The statute is intended 'to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard.'" ***Walker v. Bradley County Gov't***, No. E2013-01053-COA-R3-CV, 2014 WL 1493193, at \*3 n.3 (Tenn. Ct. App. Apr. 15, 2014) (quoting *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at \*5 n. 3 (Tenn. Ct. App. July 5, 2012)).

# IV.  DISCUSSION

## A.  *Due Process*

We will address Plaintiffs' second issue first.  It is difficult to discern the precise nature of Plaintiffs' due process argument, but her brief on appeal mentions property interests and asserts that there is not "a significant government interest that would justify Plaintiff being denied her access to the courts of this state without a meaningful hearing."  From our review of the record, however, Plaintiffs did not raise any type of due process argument before the trial court.  Therefore, we find this issue is waived on appeal.  "It is well established that the appellate courts of this state will not entertain issues raised for the first time on appeal."  ***Southern Sec. Fed. Credit Union v. Cumis Ins. Soc., Inc.***, No. W2004-02700-COA-R3-CV, 2005 WL 3527662, at *7 (Tenn. Ct. App.  Dec. 27, 2005) *perm. app. denied* (Tenn. June 5, 2006) (citing *City of Cookeville v. Humphrey*, 126 S.W.3d 897, 905–06 (Tenn. 2004); *Lawrence v. J.L. Stanford & Ashland Terrace Animal Hosp.*, 655 S.W.2d 927, 929 (Tenn. 1983); *Chadwell v. Knox County*, 980 S.W.2d 378, 384 (Tenn. Ct. App. 1998)).

## B.  *Summary Judgment on the Negligence Claim*

Now we will consider Plaintiffs' challenge to the trial court's entry of summary judgment in favor of the Airport Authority.  As noted above, the complaint in this case alleged that Mrs. Campbell "was walking up an incline at the curb outside of Terminal B, [when she] fell violently to the ground because of some loose pebbles or concrete[.]"  The complaint further alleged that Mrs. Campbell "could not prevent her fall as there were no handrails mounted and positioned at the incline."  The complaint averred that the Airport Authority was negligent because it "[a]llowed a crack, break and loose pebbles or concrete to remain in and on the walkway," "[f]ailed to warn [Mrs. Campbell] of the  possible danger presented by an incline with no handrails," "[f]ailed to install a nonslip surface on the incline," and otherwise failed to exercise due care and maintain the entryway in a reasonably safe condition.

In support of its motion for summary judgment, the Airport Authority submitted the deposition testimony of Mrs. Campbell, who testified that she did see any loose pebbles or concrete at the location where she fell, nor did she recall seeing any cracks, breaks, or gravel.  Mrs. Campbell's husband similarly testified that he did not recall seeing any cracks, gravel, or loose pebbles or concrete.  Mr. Campbell acknowledged that photographs of the scene of the accident do not show any pebbles or loose concrete.  Mr. Campbell's son testified that he was walking about ten feet ahead of Mr. and Mrs. Campbell, and he did not notice any pebbles, loose concrete, cracks, slick spots, or water on the ground.  Mr. Campbell's granddaughter similarly testified that she was walking about five feet ahead of Mrs.

Campbell, and she did not notice any water or slick spots or anything out of the ordinary about the area where Mrs. Campbell fell.

In response to the allegation in the complaint that Mrs. Campbell "could not prevent her fall as there were no handrails mounted and positioned at the incline," the Airport Authority again pointed to Mrs. Campbell's own deposition testimony. When she was asked if it was her position that there should have been handrails mounted at the location where she fell, Mrs. Campbell responded, "No. I wouldn't need no handrails." Likewise, Mrs. Campbell conceded that having a nonslip surface would not have prevented her fall.

The Airport Authority pointed to various other portions of the witnesses' depositions in support of its assertion that neither Plaintiffs nor their witnesses knew what caused Mrs. Campbell to fall. Mrs. Campbell described the incident as follows:

> Now, it happened so quick. I was headed to, you know, to go on the inside. And when I know anything, I had tipped over and fell, so I don't know. I don't know whether I stepped on something or what happened.

Mrs. Campbell explained that she had crossed the roadway where people drop off their luggage at the curb, and she fell about ten to fifteen feet from the entrance, near some large yellow posts. Although Mrs. Campbell said she made it across the street and past the crosswalk, she could not remember if she actually made it onto the sidewalk before she fell. When asked to draw and describe a diagram of the area, Mrs. Campbell said, "And when I got there, I fell. But I don't know what happened. All I know is I fell. . . . I don't know whether I tripped. Seemed like I tripped over something." Mrs. Campbell first said that "as soon as I stepped up on the curb, I fell," but when asked to elaborate, Mrs. Campbell said she stepped onto the curb with her right foot, then her left foot, "[a]nd as I walked down a few feet, that's when I fell." Mrs. Campbell said she "stepped up from the walk where the cars go, . . . and I walked for a little distance." When asked about the allegation in the complaint that she was walking up an incline when she fell, Mrs. Campbell described the incline as "[m]aybe one step or something like that. I'm not sure." However, Mrs. Campbell said she was "up on the level" surface when she fell, not on the curb, and she "wasn't walking up no steps or nothing." Mrs. Campbell was specifically asked if she knows what she fell or tripped on, and she said, "No, I don't. It wasn't raining that day, so I – had to be something for me to fall."

Mrs. Campbell testified that she had been to the airport "lots of times" and used this particular entrance about fifteen times. Mrs. Campbell was asked to describe what was dangerous about the condition of the airport on this particular day, and she responded, "Well, it's kind of hard for me to say. All I know, I was walking along. Before I knew anything,

it seemed like I double tripped when I was walking." Counsel for the Airport Authority again asked her to specify what about the airport made the situation dangerous or caused her to fall, and she said, "Well, I didn't think it was anything dangerous about it."

Mrs. Campbell's husband testified that he was walking ahead of Mrs. Campbell and saw her fall "out of the corner of [his] eye" with his peripheral vision. He was asked if he saw Mrs. Campbell step onto the sidewalk, and he said, "not really," because "the only thing [he] noticed was she was falling down," and he did not pay attention to the surface or the walkway. As a result, Mr. Campbell did not know whether Mrs. Campbell fell in the roadway or on the sidewalk. Despite this lack of knowledge, Mr. Campbell expressed his opinion that Mrs. Campbell "probably never would have fallen" were it not for the incline at the entrance to the airport. Mr. Campbell said this incline was "basically what I – I would say was the cause of her to fall. . . [m]ore than anything." Mr. Campbell described the incline as the type of ramp or break in the edge of a curb for wheelchair access. Mr. Campbell said there were large yellow triangles painted on the ground on each side of the ramp to indicate there was a rise on each side for the curb. He said he had already passed the incline and reached the level area when Mrs. Campbell fell, so he suggested that "coming to the incline, I guess that's where she fell, you know, in that area there." Again, however, Mr. Campbell admitted that he did not know whether Mrs. Campbell's feet were on the ramp when she fell, or whether she was on the roadway.

Mr. Campbell's son testified that he was walking ahead of Mr. and Mrs. Campbell, and when he turned around after hearing a strange noise, Mrs. Campbell "was laid out on the pavement." Mr. Campbell's son said "the only thing [he] could surmise" that could have caused Mrs. Campbell to fall was the access point where wheelchairs enter the sidewalk. However, he conceded that he did not actually see her fall, he only saw "the end result." Likewise, Mr. Campbell's granddaughter testified that she was walking ahead of Mrs. Campbell, heard a noise, turned around, and saw Mrs. Campbell on the ground. The granddaughter said, "I guess her foot got caught and she fell." Due to the position in which Mrs. Campbell was lying, the granddaughter assumed that Mrs. Campbell's foot "got caught" on the curb. However, she conceded that her opinion as to the cause of the fall was merely an assumption because she did not see Mrs. Campbell fall.

In their response to the Airport Authority's motion for summary judgment, Plaintiffs failed to mention their original allegations that Mrs. Campbell's fall was caused by loose pebbles or concrete and the lack of handrails. Instead, they argued that a factfinder could infer that the gradual rise in the wheelchair ramp was inadequately marked or dangerous.

As noted above, the trial court granted summary judgment to the Airport Authority, finding, based upon the undisputed material facts, that neither Mrs. Campbell nor the

witnesses she identified were able to testify as to what caused her to fall during the subject incident. The trial court found the opinion in **Pittenger v. Ruby Tuesday, Inc.**, No. M2006-00266-COA-R3-CV, 2007 WL 935713 (Tenn. Ct. App. Mar. 28, 2007) to be "persuasive and on point with the facts in this case." In that case, a restaurant patron attempted to open the restaurant door for his wife, while holding his daughter, and in the process, he rolled his ankle. *Id.* at \*1. He sued the restaurant for negligence, apparently claiming that the entrance to the restaurant was sloping or otherwise defective. *Id.* at \*2. The Court of Appeals affirmed summary judgment in favor of the restaurant, stating that even if the entrance to the restaurant was sloping, it was clear from Mr. Pittenger's deposition that he did not know what caused the injury to his ankle. Mr. Pittenger had testified during his deposition that he was "not 100 percent certain of everything that happened," and he could not remember "about the steps and stepping and which foot [he] stepped which way," but he thought that his foot was close to the edge of a two-inch platform in the doorway, and his ankle rolled over the edge when he reached to open the door. The Court explained,

> Negligence is not to be presumed from the mere happening of an accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971); *Friedenstab v. Short*, 174 S.W.3d 217, 219 (Tenn. Ct. App. 2004). Negligence shall not be presumed absent an affirmative demonstration from the evidence. *Wiedel v. Remmel*, 328 N.E.2d 391, 393 (Ohio 1975). Therefore, in the context of injuries to plaintiffs resulting from a fall, "mere speculation about the cause of an injury is insufficient to establish liability on a negligence claim." *Cohen v. Meridia Health Sys.*, No. 87001, 2006 WL 1935068, at \*2 (Ohio Ct. App. Jul. 13, 2006). "As such, a plaintiff will be prevented from establishing negligence when he, either personally or with the use of outside witnesses, is unable to identify what caused the fall. In other words, a plaintiff must know what caused him to slip and fall. A plaintiff cannot speculate as to what caused the fall." *Beck v. Camden Place at Tuttle Crossing*, No. 02AP-1370, 2004 WL 1277044, at \*2 (Ohio Ct. App. Jun. 10, 2004) (internal citations omitted); see also *Sparks v. Knoxville Util. Bd.*, No. 03A01-9803-CV-00092, 1998 WL 668719, at \*1 (Tenn. Ct. App. Sept. 30, 1998) ("In a premises liability case such as this one, the plaintiff must prove, among other things, that he or she was injured by a dangerous or defective condition on the defendant's property[.]").

In **Pittenger**, the patron's assumption that the sloping platform and the weight of the door caused his ankle to roll was "nothing more than speculation," as he could not state with definiteness what caused his injury. Because "we cannot presume negligence absent an affirmative demonstration from the evidence," we affirmed summary judgment in favor of the restaurant. *Id.* at \*4.

Another similar case is ***Mullins v. Nash***, No. 01A01-9403-CV-00138, 1994 WL 485581 (Tenn. Ct. App. W.S. Sept. 9, 1994), where a woman sued her brother for negligence, alleging that she tripped and fell over a piece of roofing material that he used as a sidewalk to his home. Her complaint alleged that her brother should have known of the unsafe condition of the "sidewalk" and that his failure to properly maintain it and failure to warn her of the dangerous condition proximately caused her injuries. However, during her deposition, Ms. Mullins testified that she did not know what caused her fall: "I was just walking to the house, and down I went." *Id.* at *1. She did not see any foreign objects or uneven ground, and she could not identify anything that her brother did to cause the fall. The walkway was in the same condition in which it had always been, and Ms. Mullins said she did not consider the walkway to be dangerous. *Id.* at *2. The Court of Appeals affirmed summary judgment in favor of the brother, stating that the record before the Court failed to establish the cause of the fall and emphasizing that "the mere fact that an injury has been sustained never raises a presumption of negligence." *Id.*

In ***Wright v. Winn-Dixie, Inc.***, No. 114, 1990 WL 125079 (Tenn. Ct. App. Aug. 30, 1990) *perm. app. denied* (Tenn. Nov. 5, 1990), we held that a directed verdict should have been granted to the defendant grocery store where a customer fell but could not identify the cause of her fall and merely assumed that the floor must have been slippery due to the fact that she fell. Basically, the customer "speculated on the cause of her fall, and . . . asked the jury to do likewise. This [was] not permissible." *Id.* at *2. We explained that a proprietor "has a duty to its customers to exercise ordinary care and diligence to maintain the premises in a reasonably safe condition," but this does not mean that the proprietor is an insurer of the safety of its invitees. *Id.* (citing *Paradiso v. Kroger Company*, 499 S.W.2d 78 (Tenn. App. 1973)). "Put another way, negligence is a matter of some fault or departure from the standard of reasonable care or conduct." *Id.* at *3. Because the customer put forth no evidence of any act or omission on the part of the grocery store that caused the plaintiff to fall, a directed verdict was proper.

As these cases demonstrate, "People fall all the time but this does not perforce mean that the fall was due to another's negligence or something that was in another's control." ***Anderson v. Wal-Mart Stores East, L.P.***, No. 2:12–00037, 2013 WL 3010696, at *3 (M.D. Tenn. June 18, 2013) (granting summary judgment to the defendant store where the plaintiff repeatedly testified during her deposition that she had no idea what she tripped on).

In the case at bar, the Airport Authority submitted evidence that affirmatively negated Plaintiffs' claims that she fell "because of some loose pebbles or concrete," the lack of handrails, or the lack of a nonslip surface. As for any other general allegation of negligence, the Airport Authority pointed to evidence demonstrating that Plaintiffs' evidence was "insufficient to establish an essential element of [their] claim," namely, causation. There was

-10-

no evidence in the record to prove what caused Mrs. Campbell to fall.  As she put it, "I don't know whether I stepped on something or what happened."  She said, "I don't know what happened.  All I know is I fell. . . . I don't know whether I tripped."  Mrs. Campbell could not remember if she fell on the sidewalk or in the roadway.  At one point she said she tripped "as soon as [she] stepped up on the curb" but later she said she stepped up with both feet and "walked for a little distance" before she fell.  She insisted she was "up on the level" surface and not on the curb.  When Mrs. Campbell was specifically asked if she knew what she fell or tripped on, she said, "No, I don't.  It wasn't raining that day, so I – had to be something for me to fall."  However, she went on to say there was nothing dangerous about the condition of the airport.

Mrs. Campbell's husband did not know, either, whether Mrs. Campbell fell in the roadway or on the sidewalk.  He suggested that Mrs. Campbell fell because of the wheelchair incline, but he admitted that he did not know whether Mrs. Campbell's feet were on the ramp when she fell or whether she was in the roadway.  Likewise, Mr. Campbell's son and granddaughter assumed or speculated that Mrs. Campbell may have fallen on the incline or on the curb, but neither of them saw her fall, so they could not say for sure.

The evidence submitted by the Airport Authority was sufficient to shift the burden of production to the non-moving party, Plaintiffs.  In their response to the Airport Authority's motion for summary judgment, Plaintiffs claimed that a factfinder could infer that the gradual rise in the wheelchair ramp was inadequately marked or dangerous.  This assertion was insufficient to meet Plaintiffs' burden in response to the Airport Authority's properly supported motion.  It does not matter if the wheelchair ramp was inadequately marked or dangerous if Plaintiffs cannot prove that it was the ramp that caused Mrs. Campbell's injury.  Plaintiffs also argued in response to the motion for summary judgment that, under ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008), it is not enough to point to omissions in a plaintiff's proof at the summary judgment stage.  However, ***Hannan*** is not the standard that applies in this case.  For all these reasons, we find that the trial court properly granted summary judgment to the Airport Authority.

## C.    Attorney's fees on Appeal

The Airport Authority contends that Plaintiffs' appeal was frivolous, and it seeks an award of appellate attorney's fees.  Tennessee Code Annotated section 27-1-122 provides for an award of sanctions in the form of attorney's fees when an appeal is determined to be frivolous.  "A frivolous appeal is one that is 'devoid of merit such that it had no reasonable chance of succeeding.'" ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 341 (Tenn. 2010) (quoting *Clark v. Nashville Mach. Elevator Co.*, 129 S.W.3d 42, 50 n. 4 (Tenn. 2004)).  The statutory authorization for awarding attorney's fees "reflect[s] the view that successful parties

should not have to bear the costs and vexation of baseless appeals." *Id.* at 342. Still, "care must be taken by the courts to avoid discouraging legitimate appeals," so "imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable—which is rare." *Id.*

Plaintiffs' brief on appeal failed to include citations to the record, its facts section consisted of two sentences, it attempted to raise an issue that was not presented in the trial court, and although it cited cases discussing summary judgments generally, it did not cite any authority relevant to the issue of premises liability. Exercising our discretion, we grant the Airport Authority's request for appellate attorney's fees and remand to the trial court for determination of a reasonable fee.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court and remand for further proceedings. Costs of this appeal are taxed to the appellants, Willie Campbell and Ulysses Campbell, Sr., and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.